## QUAKER OATS CO. v. GENERAL MILLS, Inc.
### No. 8071.

Circuit Court of Appeals, Seventh Circuit.

Feb. 9, 1943.

Rehearing Denied April 20, 1943.

---

430

James P. Hume and Charles L. Byron, both of Chicago, Ill., for appellant.

Edward S. Rogers, Wm. T. Woodson, James H. Rogers, Wm. D. McKenzie, James M. Best, and George I. Haight, all of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff-appellee, the Quaker Oats Company, filed an application in the Patent Office to register as a trade-mark the word "Oaties" to designate a ready-to-eat breakfast food made of oats. The Patent Office refused to register this word as a trade-mark. The plaintiff appealed to the United States Court of Customs and Patent Appeals. The defendant-appellant, General Mills, Inc., elected to have the proceedings under Section 4915, Revised Statutes, 35 U.S.C.A. § 63, which had the effect of forcing the plaintiff into the District Court. The plaintiff accordingly filed its petition to compel the Patent Office to register the name "Oaties," and also filed a complaint for a declaratory judgment holding that it was entitled to use the names "Oaties" and "Quaker Oaties" on a prepared breakfast food made of oats, and that such trade-marks did not infringe or colorably imitate the registered trade-marks of the defendant, to wit, "Wheaties," "Kornies," and "Maizies." While the mark sought to be registered was the word "Oaties," the mark used commercially to market the plaintiff's product at the time the complaint was filed and subsequent thereto was "Quaker Oaties."

The defendant answered the complaint and filed a counterclaim asking that the plaintiff be enjoined from using the marks "Oaties" and "Quaker Oaties," alleging that they infringed the defendant's registered trade-marks, "Wheaties," "Kornies," and "Maizies," and that the plaintiff was guilty of unfair competition.

The court refused to grant the petition of the plaintiff to register "Oaties," and this portion of the court's judgment is not appealed from. The court granted to the plaintiff the right to use "Oaties" and "Quaker Oaties" to designate its product, and dismissed the defendant's counterclaim for infringement and unfair competition. The defendant and counterclaimant appeals.

The questions we have then are whether the use of the words "Oaties" and "Quaker Oaties" infringes the defendant's trade-marks, and whether the use of the words "Oaties" and "Quaker Oaties" in the marketing of a ready-to-eat oats cereal amounts to unfair competition with the products of the defendant.

The defendant's predecessor, Washburn-Crosby Company, registered the name "Wheaties" on June 9, 1925, to be used as a trade-mark on a ready-to-eat cereal made of wheat. In the eighteen years "Wheaties" has been on the market, between eight and nine hundred million packages have been sold. "Wheaties" has been extensively advertised, the defendant having expended about eighteen million dollars for this purpose. "Kornies" and "Maizies" have never been developed or sold commercially. They are registered as trade-marks to be used on ready-to-eat cereals made of corn. Of these two latter products, a few packages have been sold each year, amounting to a few cents in revenue.

Did the defendant, by registering the word "Wheaties" as a trade-mark for a ready-to-eat cereal made of wheat, acquire the right to exclude the use of the words "Oaties" and "Quaker Oaties" by the plaintiff as an unregistered name under which it sought to market a ready-to-eat cereal made of oats? The names themselves suggest two different kinds of products. One suggests a product made of wheat, and the others a product made of oats. Obviously, the defendant would have no right to appropriate a generic name of one grain so as to preclude the use by someone else of the generic name of another grain. Has the defendant accomplished the result by adding the diminutive suffix "ies" to the name of the grain? We think not. The defendant could not appropriate either the generic word descriptive of the grain, or the mere suffix, or a com-

bination of both, in such a maner as to exclude others from using the combination on a different grain. Dixi-Cola Laboratories v. Coca-Cola Co., 4 Cir., 117 F.2d 352, 358.

█ Furthermore, we think the defendant, as the owner of the registered trade-mark "Wheaties," should not be heard to deny the right of the plaintiff to use the words "Oaties" and "Quaker Oaties" to describe an oats product. If "Kornies" and "Maizies" are sufficiently distinct from "Wheaties" to authorize the defendant to have the words "Kornies" and "Maizies" registered as trade-marks for cereals made out of corn, then we see no reason why the plaintiff may not claim the name "Oaties" to be sufficiently descriptive to use on a product of oats which it manufactures. If General Mills, a long-time dealer in wheat products, can make a trade-mark out of the word "Wheaties," there is no reason why Quaker Oats, which has been marketing oats products longer than the defendant has wheat products, can not use the word "oats" plus "ies" to designate an oats product. The one does not infringe the other.

█ The defendant contends that by the use of the names "Wheaties," "Kornies," and "Maizies," it has established a family of names, and that the plaintiff, by the use of the name "Oaties" has infringed this "family" of names. We are unable to agree with this contention. Assuming for the purpose of argument that it is possible to establish a "family" of names, what would constitute an infringement of this "family" of names? We have difficulty in seeing how there could be an infringement unless the group or family of names had become so well-known as to have a secondary meaning. In other words, when the name "Wheaties" was mentioned, the names "Kornies" and "Maizies" would be more than likely called to mind. From the facts presented in the record, and from what we have said before, it is evident that such a secondary meaning has not been established. Only a few packages of "Kornies" and "Maizies" have been sold, so that these names are unknown to the public. We find no infringement of the names "Wheaties," "Kornies," and "Maizies" collectively. Indeed, the situation in the market as shown by the record would make it impossible to establish such meaning. As the trial court found, the defendant was not the first or the exclusive user

of the diminutive suffix "ies" as a part of a brand name for a ready-to-eat cereal breakfast food. The plaintiff had registered its Quaker "Quakies" as early as 1921, and Quaker "Sparkies" in 1939. General Foods had registered "Post Toasties" in 1908. Other registered trade-marks for cereals are the Kellogg Company's "Rice Krispies" and "Wheat Krispies," and the National Biscuit Company's "Shreddies." It would seem the defendant is the interloper in this "ies" family. Our sympathy for the family ties was greatly diminished when we recalled that at the time the defendant was ready to market its ready-to-eat breakfast cereal of oats, it sent it forth into the cruel competitive world not as "Oaties" but as "Cherrioats," wholly deprived of its family name.

█ Since the defendant had no right to exclude the plaintiff from the use of the words "Oaties" and "Quaker Oaties," because their use did not infringe the defendant's trade-marks, the plaintiff was free to use the names "Oaties" and "Quaker Oaties" with only one limitation upon such use. The plaintiff was bound to use reasonable care in the marketing of its product to see that the public was informed of the source thereof, and to so identify its product as to make it readily distinguishable from the defendant's product. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 119, 59 S.Ct. 109, 83 L.Ed. 73.

It is conceded that the plaintiff did not try to "palm off" "Oaties" or "Quaker Oaties" as "Wheaties." There is no evidence that any customer in all the millions of the defendant's customers for "Wheaties" ever bought a box of "Oaties" or "Quaker Oaties" thinking that he was getting "Wheaties."

Both parties conducted surveys. The defendant, from its survey, subpoenaed some seventeen of the persons interviewed to testify in court and to identify a questionnaire each had responded to on the survey. The substance of their testimony was that a representative of the defendant came to their houses making a survey on ready-to-eat cereals, and asked each witness a number of questions from a questionnaire which was filled out in the presence of the witness and signed by the witness. The gist of the questionnaire and of the testimony of these seventeen witnesses at the time was directed to the answers the witnesses had made to Question 5 in the ques-

432

tionnaire. In making the survey, Question 5 was propounded in two ways, "Do you recall what company makes 'Oaties'?" or in the alternative, "Here is an advertisement of 'Oaties.' What company do you think makes it?" The response of these seventeen witnesses was to the effect that the "Wheaties" company made it.

At the time the question was asked, an advertisement of the plaintiff was exhibited to the person being interviewed, and who later testified in court, which advertisement fairly shrieked "Quaker" at one who looked at it. The dominating feature of the advertisement was the smiling countenance of a Quaker as he exhibited in his hands the enlarged facsimile of a carton in which "Oaties" was then being marketed.

The package in which the plaintiff at first marketed its product exhibited on the flat broad side thereof a blue field in the upper two-thirds of the package, with the word "Oaties" in large white letters diagonally across the blue field. Above the word "Oaties" in quite large letters was the word "Quaker." The lower one-third of the field was red, with the words "Oat Cereal" in quite prominent letters, and at the bottom of the package in smaller, but very distinct, white letters and blue letters, "Manufactured By The Quaker Oats Company Address—Chicago, U. S. A." This package has been discontinued at the time of the trial, although some of the packages were probably still to be found on the market.

The package that took its place is even more emphatic than the first package in the message its appearance conveys that it is a Quaker product. The face or flat side of the package is divided into a red field at the top, in which is the well-known vignette of the Quaker in his distinctive dress. On each side of the Quaker are the words in script, "Ready to Eat." The lower part of the package is a blue field somewhat larger than the red field, and the words "Quaker Oaties" are in large white letters across the package, parallel to the top and bottom. At the bottom in very distinct, sizable letters of blue, on a narrow red strip, are the words, "Manufactured By The Quaker Oats Company Address: Chicago, U. S. A." The other spaces on the package proclaim the pride of origin with a little less emphasis, but displaying on the package the name "Quaker" in twenty different places. The package color

scheme of red, white and blue is the same as that used for years by the plaintiff to adorn its packages for oatmeal, which were on the market years before the defendant entered the "Wheaties" business.

The defendant's package for "Wheaties" is a differently shaped and larger package than the plaintiff's. The face of it is an orange field with a large blue disc on it, and diagonally across the blue disc is a white strip with the word "Wheaties" in large blue letters thereon. In distinct but much smaller print at the bottom of the package it is stated, "Copyright 1941 By General Mills, Inc. Manufactured By General Mills, Inc., General Offices, Minneapolis, Minn."

The form, dress and coloring of the packages and the manner in which they are presented to the consuming public are the unfailing, most significant talismans of fair or unfair dealing. The pirate flies the flag of the one he would loot. The free and honorable non-pirate flies the colors of his own distinctive ensign.

These packages were exhibited in the record and physically in open court. We saw them, as the trial court did. They were sufficient in themselves to dispel confusion. J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 120 F.2d 949, 956. Without even considering the testimony of the plaintiff's witnesses on the question of confusion, which testimony, consisting of that of more than one hundred witnesses, tended to show the public was well able to understand what it was doing when it had to make a decision between the defendant's and the plaintiff's products, we think the trial court reached the correct conclusion when it found that "Oaties" and "Quaker Oaties" were not confusingly similar to "Wheaties," "Kornies," and "Maizies," and that the public did not attribute "Oaties" to the defendant. Anyone deceived or confused by the plaintiff's package into believing he was getting the defendant's package would be careless to a degree that the law has no duty to protect. One would have to be stupid to be misled or confused when confronted in a grocery store with the plaintiff's and the defendant's packages. The plaintiff, in marketing its goods, is not bound to make them "foolproof" so that no one can make a mistake in regard thereto. John Morrell & Co. v. Doyle, 7 Cir., 97 F.2d 232, 237. As Mr. Justice Brandeis said in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, at page 121, 59

S.Ct. 109, 115, 83 L.Ed. 73: "The obligation resting upon Kellogg Company is not to insure that every purchaser will know it to be the maker but to use every reasonable means to prevent confusion."

The plaintiff, it seems to us, has scrupulously avoided any piratical methods for the purpose of stealing the good will the defendant had built up for its product. It has used only a name which it had a right to use. In this, it invaded none of the defendant's rights. Again we quote Mr. Justice Brandeis in the Kellogg case, at page 122 of 305 U.S., at page 115 of 59 S. Ct., 83 L.Ed. 73: "Kellogg Company is undoubtedly sharing in the goodwill of the article known as 'Shredded Wheat'; and thus is sharing in a market which was created by the skill and the judgment of plaintiff's predecessor and has been widely extended by vast expenditures in advertising persistently made. But that is not unfair. Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all— and in the free exercise of which the consuming public is deeply interested." While the article "Wheaties" is protected by a trade-mark, the validity of which is not before us, it is unprotected against the name the plaintiff uses.

The evidence clearly sustains the trial court's findings of fact, and the findings support the conclusion. There was no infringement of the defendant's trademark, or unfair competition, in the plaintiff's conduct.

There is an attempt to present a question as to the right of the trial court to hear testimony of certain surveys conducted by the plaintiff to ascertain the state of consumers' minds concerning the respective products of the parties. In the view we take of this record, all of the plaintiff's evidence obtained by the surveys could be disregarded, and the court would still be correct in the conclusion it reached. The packages themselves make it impossible to reach a conclusion that the plaintiff had not used reasonable care to see that the public was not misled or that its goods might not be purchased by the public as the defendant's goods. The trial court must have been impressed, as we were, with the utter dissimilarity of the names and the dress in which the products were presented to the prospective customers. When met in the market place, the products of the parties left no room for doubt as to their source or their nature. There was no confusion there. That is the place that counts. Purchases of merchandise are not made in a vacuum with Professor Quiz in charge. It may be possible to create confusion in this case, but neither the names nor the manner of marketing the products does so.

The judgment is affirmed.