**The CONDE NAST PUBLICATIONS, INC., Appellant,**

v.

**MISS QUALITY, INC., Appellee.**

**Patent Appeal No. 74–554.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1975.

Alex Friedman, New York City, atty. of record, for appellant. Blum, Mosco-

vitz, Friedman & Kaplan, New York City, of counsel.

Leon Edelson, Philadelphia, Pa., atty. of record, for appellee. Edelson & Udell, Philadelphia, Pa., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board[1] dismissing appellant's opposition No. 50,338, filed December 31, 1969, against application serial No. 309,312, filed October 9, 1968, by Stylecraft Frocks, Inc., for registration of COUNTRY VOGUES as a trademark for ladies' and misses' dresses, use since September 20, 1968, being alleged. Appellee is assignee of Stylecraft Frocks, Inc. Appellant is owner of the trademark VOGUE for a magazine and alleges continuous use and registration thereof since 1908.[2] We affirm.

■ The issue is whether appellee's mark so resembles appellant's mark as to be likely, when applied to appellee's goods, to cause confusion or mistake, or to deceive for purposes of 15 U.S.C. § 1052(d).[3]

From the parties' stipulation of facts, it is recognized that VOGUE magazine is and always has been a leading fashion magazine; that it is distributed throughout the United States and Canada, usually at seventy-five cents a copy; that average circulation from 1960 through 1971 ranged from 423,000 to over 508,000 per month; and that appellant's annual promotion costs for the magazine have increased from $467,340 for 1960 to over $1 million for 1968 through 1971.

Appellant's 1948 registration indicates that VOGUE magazine is published twenty times yearly. An examination of the March 15, 1972, issue exhibited by appellant shows that about half its pages are devoted to advertising or discussion of women's apparel and that the "FASHION" section comprises displays of apparel for "The Weekend Spirit," "City Weekend," "Sun Weekend," and "Country Weekend." Outfits pictured for "Country Weekend" have "Vogue Pattern" numbers, and approximate prices at various stores are indicated for clothes shown for all the "Weekends." Exhibits of promotional material for the magazine include a special VOGUE issue ("The New York Collections Issue"), showing advertisements consisting of window displays, predominantly of dresses and women's outer apparel; a brochure advertising a December issue of the magazine and stating that it will include "a panorama of fashion and its accessories"; and a Fabric Chart for Resort-Spring-Summer 1970 from VOGUE.

Appellant argues that "the public would be reasonably likely to believe that applicant's dresses have some association or connection with opposer's well-known VOGUE fashion magazine . . .." It cites several cases to support its contention that a natural relationship exists between a fashion magazine and wearing apparel, such as dresses, but only one of these is apposite, namely: In re Montreal Dress & Sportswear Mfrs.' Guild, 166 U.S.P.Q. 278 (TTAB 1970). There the board affirmed a refusal to register ELAN, which it considered an "arbitrary" mark, for a fashion magazine because of likelihood of confusion with a virtually *identical* mark (ELAN in script) registered for women's apparel. In Jos. S. Cohen & Sons Co., v. Hearst Mags., Inc., 220 F.2d 763, 42 CCPA 836 (1955), the court affirmed the Patent Office decision granting a petition by the owner of Good

1. 180 U.S.P.Q. 149 (1973).

2. Registration No. 69,530, issued June 16, 1908, and twice renewed; registration No. 504,006, issued November 16, 1948, and renewed.

3. Appellee makes the point that the record contains no evidence of actual confusion, but we note that only about one year elapsed between the alleged date of first use of COUNTRY VOGUES and filing of the opposition. Also, evidence of actual confusion is not required by 15 U.S.C. § 1052(d). In re Calgon Corp., 435 F.2d 596, 58 CCPA 830 (1971).

Housekeeping magazine to cancel registration of Good Housekeeper, for women's misses', and children's dresses, frocks, pajamas, etc. *Nowhere did the court mention any relationship between a fashion magazine and wearing apparel,* and the court was persuaded by the fact that the well-known Good Housekeeping Guarantee Seal (applied to articles, including dresses, advertised in the magazine) was applied to goods identical in kind with those of Good Housekeeper. In Conde Nast Publications, Inc. v. American Greetings Corp., 329 F.2d 1012, 51 CCPA 1176 (1964), the court reversed the board and sustained the opposition to registration of VOGUE for *greeting cards.* Conde Nast Publications, Inc. v. Vogue School of Fashion Modelling, Inc., 105 F.Supp. 325 (S.D.N.Y.1952), was a suit against a *modeling school* which was employing the word "Vogue." The statement of the court, "In the world of fashion, plaintiff [owner of VOGUE magazine] has acquired a common law right to its exclusive use," is followed by the statement: "The extent and boundaries of that use covers the range of ordinary associations that is formed in the public mind; it includes fashion modeling and schools where fashion modeling is taught." Neither of these statements would necessarily hold today, so many years later. See Old Grantian Co. v. William Grant & Sons, Ltd., 361 F.2d 1018, 53 CCPA 1257 (1966).

■ Appellee argues that the term VOGUE is "weak" as applied to wearing apparel and cites various cases for the proposition that protection accorded "weak" or "descriptive" marks is "narrow."[4] Although this court has often referred to the "scope of protection," "degree of protection," and "latitude of protection" to be accorded marks—"limited" in the case of "weak" marks and "broad" or "wide" in the case of

"strong" marks, it has, nevertheless, made it clear that the decisive question is whether there is a likelihood of confusion, mistake, or deception for purposes of 15 U.S.C. § 1052(d). Therefore, if there is such likelihood, that ends the matter whether appellant's mark be termed "weak" or "strong." In Standard International Corp. v. American Sponge and Chamois Co., 394 F.2d 599, 600, 55 CCPA 1155, 1156 (1968), this court pointed out that "a mark which is initially a weak one may, by reason of subsequent use and promotion, acquire such distinctiveness that it can function as a significant indication of a particular producer as a source of the goods with which it is used." Proof is needed to persuade that such distinctiveness has been attained, however; whereas no such proof is required where the initial mark is arbitrary and distinctive. Here, as related above, there is substantial proof of a relationship between VOGUE magazine and ladies' and misses' wearing apparel.

Appellee relies heavily on Conde Nast Publications, Inc. v. Glamorise Foundations, Inc., 171 U.S.P.Q. 174 (TTAB 1971). Unfortunately, this is an unpublished opinion, reported only in digest form, and is not of record. In its opinion below, the board merely stated:

"GLAMOR–X" for foundation garments was held not to conflict with "GLAMOUR" for a fashion magazine.

■ Appellee further relies on some sixty-nine third party registrations of marks in which "Vogue" appears in one form or another as evidence showing "ordinary usage" of the word "Vogue." However, most of these registrations either have been canceled or expired. There is no evidence of actual use, and this court has made it clear that, without such evidence, third party registrations

4. For example Sure Fit Products Co. v. Saltzson Drapery Co., 254 F.2d 158, 45 CCPA 856 (1958); J. Kohnstam, Ltd. v. Louis Marx & Co., 280 F.2d 437, 47 CCPA 1080 (1960). Appellee stresses Vogue Co. v. Thompson-Hudson Co., 300 F. 509 (6th Cir. 1924), where the court refused to grant relief for trademark infringement based merely on defendant's use

of the word "Vogue" in "Vogue Hats" and said that "Vogue" was a word which "all are at liberty to use." This could scarcely bind events occurring over the past fifty years. See Old Grantian Co. v. William Grant & Sons, Ltd., supra. Moreover, this case involved a law different from that with which we are here concerned.

are entitled to little weight on the question of likelihood of confusion. Stanadyne, Inc. v. Lins, 490 F.2d 1396 (CCPA 1974). Appellant argues that "most" of the third party registrations relied on by appellee were cited in Conde Nast Publications, Inc. v. American Greetings Corp., supra, but analysis indicates that only four of the sixty-nine were cited there. Appellant further argues that the board erred in giving undue weight to the third party registrations and took no cognizance of the fact that all of them issued after the issue date of appellant's first registration of VOGUE. However, it appears that the board cited the third party registrations primarily to show the meaning of "Vogue" in the same way that dictionaries are used. See Hancock v. American Steel & Wire Co., 203 F.2d 737, 40 CCPA 931 (1953). Also, we have been given no reason, and no authority has been cited, why such registrations would carry any less weight in assessing the meaning of VOGUE because they issued after 1908.

 In its opinion, the board said:

It is our opinion that persons encountering misses' and ladies' dresses under the mark "COUNTRY VOGUES" in the marketing environment generally surrounding the sale of goods of this type would in the context in which it is used attribute to the term "VOGUES" its normal and well-known meaning and would not, in any way, associate this apparel with the publisher of "VOGUE" magazine.

We agree. According to Webster's Third New International Dictionary (1971), "vogue" has a meaning of "something . . . in fashion at a particular time," as a noun, or "being currently or temporarily in vogue: FASHIONABLE," as an adjective. Obviously VOGUES is not an adjective. COUNTRY VOGUES and VOGUE do not look or sound alike. The only similarity between them is that VOGUE is part of the mark COUNTRY VOGUES, and the dissimilarities between the marks, viewed in their entireties, outweigh this similarity sufficiently to leave no doubt.[5]

Having considered the entire record, along with the briefs and arguments of the parties, we hold that COUNTRY VOGUES does not so resemble VOGUE as to be likely, when applied to appellee's ladies' and misses' dresses, to cause confusion or mistake, or to deceive.

The decision of the board is affirmed.

Affirmed.

---

5. Appellee argues that doubt is resolved in favor of the applicant, but here the opposite is true since appellee is the newcomer. In re Pneumatiques, Caoutchouc Manufacture, 487 F.2d 918 (CCPA 1973). Appellee also argues that dismissal of a cancellation proceeding brought by appellant against appellee is res judicata, citing Conde Nast Publications, Inc. v. Miss Quality, Inc., 170 U.S.P.Q. 364 (TTAB 1971); but the trademark involved there, JUNIOR VOGUES, is not the same as COUNTRY VOGUES, so that res judicata is inapplicable.