PIZZERIA UNO CORPORATION,
Plaintiff,

v.

James W. TEMPLE, Jr., d/b/a Taco
Uno, Defendant.

Civ. A. No. 82–1218–15.

United States District Court,
D. South Carolina,
Columbia Division.

April 8, 1983.

Robert A. McKenzie, Columbia, S.C., George L. Greenfield, and Edward F. Perlman, Boston, Mass., for plaintiff.

Cort Flint, Jr., Greenville, S.C., for defendant.

---

## ORDER

HAMILTON, District Judge.

The plaintiff, Pizzeria Uno Corporation, brought this action against the defendant, James W. Temple, Jr., d/b/a Taco Uno, alleging three causes of action; namely, (1) trademark infringement of a federally registered mark pursuant to Section 32(1) of the Lanham Trade-Mark Act, 15 U.S.C. § 1114(1); (2) false designation of origin pursuant to Section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a); and (3) unfair competition under principles of (South Carolina) common law.

The action came on for trial before the court sitting without a jury on March 24, 1983. Pursuant to Rule 52(a), Fed.R.Civ.P., the court hereby enters the following Findings of Fact and Conclusions of Law stating the reasons for its decision that the plaintiff has failed to establish its burden of proving that the defendant has infringed plaintiff's mark, that the defendant has designated falsely the origin of its food services, or that the defendant has engaged in unfair competition under the principles of South Carolina common law.

## FINDINGS OF FACT

1. Plaintiff, Pizzeria Uno Corporation, is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts and has its principal place of business at 100 Charles Park Road, Boston, Massachusetts 02132. Plaintiff is the owner of United States Trademark Registration No. 1,089,458 for the mark "Pizzeria Uno." The United States Patent and Trademark Office on April 11, 1978, granted to the plaintiff's predecessor in title Registration No. 1,089,458 for the mark "Pizzeria Uno" to be used in conjunction with restaurant services. Plaintiff operates or franchises a number of restaurants under the name "Pizzeria Uno" which specialize in Italian cuisine, most notably pizza products. Plaintiff owns four restaurants, is the franchisor for twelve others and has plans to open from 120 to 150 more restaurants in the next five years. Plaintiff and its franchisees have opened and are operating Pizzeria Uno restaurants in the following cities: Boston, Massachusetts; Cambridge, Massachusetts; Framingham, Massachusetts; Indianapolis, Indiana; Washington,

D.C.; Kansas City, Missouri; San Francisco, California; Philadelphia, Pennsylvania; Laguna Hills, California; Columbus, Ohio; Cincinnati, Ohio; Ann Arbor, Michigan; Ft. Lauderdale, Florida; Louisville, Kentucky and Atlanta, Georgia. Plaintiff does not have any restaurants in the state of South Carolina.

2. The mark "Pizzeria Uno" was first used by a Chicago, Illinois, restaurant. In 1943, Ike Sewell and his partner, Ric Riccardo, opened a unique pizza restaurant in Chicago under the mark "Pizzeria Uno." Mr. Sewell and his partner began selling a deep-dish style, thick-crusted pizza under the mark "Pizzeria Uno" which met with success in the Chicago area. The original Pizzeria Uno restaurant continues to sell this unique pizza under the mark "Pizzeria Uno." Plaintiff acquired rights to the mark "Pizzeria Uno" from Mr. Sewell by agreement dated August 3, 1979. Plaintiff is the exclusive franchisor of the mark "Pizzeria Uno" throughout the world, excluding the state of Illinois.

3. Each restaurant operating under the mark "Pizzeria Uno" has approximately five thousand square feet of space and is located in both free standing and attached building locations. Each of the restaurants has exterior signs which prominently display the mark "Pizzeria Uno." In addition, various items, such as menus, napkins and miscellaneous restaurant furnishings and supplies, have the mark "Pizzeria Uno" prominently displayed thereon.

4. In using the mark "Pizzeria Uno," plaintiff has tended to emphasize the word "Uno" to the extent of gradually having "Uno" predominate in the mark. "Pizzeria" has diminished in size and "Uno" has been enlarged and accentuated. "Uno" is emphasized in this manner on menus, indoor and outdoor signing, napkins, matchcovers, take-out boxes, comment cards, aprons for the waiters and waitresses, baseball caps and in all of plaintiff's advertisements. Notwithstanding the relative sizes of the two words, the registered trademark is "Pizzeria Uno" and plaintiff has neither registered the word "Uno" as its mark nor otherwise taken steps to inform the public that "Uno" is claimed as its trademark. The court does note, however, that the plaintiff has filed an application to register the word "Uno," which matter currently is pending before the United States Patent and Trademark Office.

5. Pizza sales are 47% of plaintiff's business. In addition to various pizzas, plaintiff's menus offer soups, sandwiches, salads, desserts, beers, wines and other (mixed drinks) alcoholic beverages. Plaintiff's restaurants sell a "Mexican Pizza," "Mexicano" pizza-style sandwich, "Sangria Puncher-Uno," Pina Colada and Midori Colada.

6. Plaintiff's restaurants are staffed by hosts/hostesses, waiters/waitresses, chefs and bartenders. "Take-out" service is provided, but the predominant method of conducting business is by means of sit-down service.

7. Pizzeria Uno restaurants are distinctively designed and decorated. The interior design is marked by the use of hardwood floors, tables with natural wood tops, brass, antiques, leaded glass, Tiffany light fixtures and tin ceilings. The heritage is depicted in the back of the menu as "A Chicago Legend Comes To Town." The restaurants are designed to create a warm and comfortable environment in which to enjoy a meal. High standards of overall product presentation under the mark "Pizzeria Uno" are extensively controlled and monitored by plaintiff.

8. All of the franchised restaurants use the mark "Pizzeria Uno" to identify plaintiff as the source of origin of a restaurant which sells deep-dish pizza pie created by Ike Sewell and franchised by plaintiff throughout the United States. A valuable asset of plaintiff's business is the goodwill and reputation attached to its distinctive trademark, "Pizzeria Uno." The average cost to a franchisee for opening a Pizzeria Uno restaurant approximates one million dollars. Thereafter the franchise royalty is

5% of gross sales, which for 1982 amounted to approximately $1,100,000.00 per restaurant.

9. Plaintiff has an advertising budget in the order of two percent of the gross sales of the restaurants. Plaintiff advertises extensively throughout the United States, including northern Georgia. This advertising includes monthly ads in *Atlanta* magazine, weekly newspaper ads in the *Atlanta Constitution* and the *Atlanta Journal,* frequent radio advertising on Atlanta FM stations WQXI and Z–93, and occasional national television advertisements for the Atlanta franchise. Plaintiff does not advertise in South Carolina.

10. Plaintiff has had inquiries from persons interested in obtaining a franchise for a Pizzeria Uno restaurant in the state of South Carolina and reviewed two inquiries from people in Columbia, South Carolina.

11. Plaintiff is seeking franchisees for its Pizzeria Uno restaurants throughout the United States, including South Carolina. An employee living in South Carolina is in charge of negotiating for new Pizzeria Uno locations.

12. Defendant, James W. Temple, Jr., an individual residing within the state of South Carolina, has adopted and uses the mark "Taco Uno" to identify restaurant services located at 2444 Decker Blvd., Columbia, South Carolina 29206, and at 1064 Broad Street, Sumter, South Carolina 29150 which specialize in Mexican food products. Defendant began using the mark "Taco Uno" on or about July 14, 1981, in connection with his restaurant services at the Decker Blvd. and Broad Street locations in the Columbia and Sumter areas. Defendant's restaurants predominantly specialize in the serving of Mexican style food. The defendant's business is a fast-food type operation where food is ordered at the counter and then carried to a table or out of the restaurant. The restaurant operation is typical of the many fast-food restaurants which have rapidly developed over the past two decades that specialize in a certain type

of food such as pizzas, hamburgers, fried chicken, hot dogs, Mexican foods, etc.

13. Prior to July 14, 1981, and beginning in 1979, defendant was owner and manager of two Mexican fast-food restaurants operated under the name "Taco Cid" at the Decker Blvd. and Broad Street (South Carolina) locations. From 1970 to 1979, the defendant was engaged in various operator and managerial positions in the food service industry. Mr. Temple first worked for Pizza Corporation of America, a franchisee of Pizza Hut, and later for the parent company, Pizza Hut, Inc. Initially, Mr. Temple managed a Pizza Hut restaurant from October, 1971, to March 31, 1972, in Columbia, South Carolina. From April 1, 1972, until February, 1973, Mr. Temple was an area manager for Pizza Hut restaurants in Savannah, Charleston, and Myrtle Beach, South Carolina. During 1973, he served as regional manager over Pizza Hut restaurants in Virginia and South Carolina. By early 1974 Mr. Temple was regional manager of numerous Pizza Hut restaurants in the north central market which comprised the six states of North Dakota, South Dakota, Minnesota, Wisconsin, Iowa and Illinois. As regional manager, Mr. Temple had the duties of planning growth in these areas, staffing the restaurants, upgrading, directing the area managers, budgeting expenses, monitoring sales volume and profit, and analyzing the competition. Included within his responsibility were restaurants located in the suburban Chicago area: Waukegan, Libertyville, Zion, Kenosha and Racine. Waukegan borders North Chicago, Libertyville is 30 minutes north of Waukegan and Zion is 20 minutes further north of Libertyville. Mr. Temple visited restaurants within his area of responsibility in suburban Chicago on occasion. Mr. Temple flew into and out of Chicago on several occasions and visited Illinois at least once every three months. During the time of his business trips to the Chicago area, Mr. Temple never heard of Ike Sewell's Pizzeria Uno restaurant.

14. In 1975, Mr. Temple became regional manager of the southwest region which in-

cluded approximately 400 Pizza Hut restaurants in Texas, Louisiana and Arkansas.

15. In 1977 the defendant left Pizza Hut, Inc., and moved to Smithfield, North Carolina, where he was part owner in Taco Cid, Inc., and in charge of developing a system of Mexican fast-food restaurants under the name "Taco Cid." Defendant moved to Columbia, South Carolina in 1979 where he operated and owned the Taco Cid restaurant franchises at the Decker Blvd. and Broad Street locations.

16. In the spring of 1981, defendant decided to terminate his Taco Cid franchises, sell his stock in Taco Cid, Inc., and begin the development of his own system of Mexican fast-food restaurants. The name "Taco Uno" was selected by Mr. Temple from a list of proposed marks prepared by him. His first choice was "Taco Castle," but upon learning that this mark was already taken by a franchise chain, Mr. Temple decided on "Taco Uno." He had thought of this mark while driving one day from Smithfield, North Carolina, to Columbia, South Carolina. During the trip, defendant noticed an advertising billboard at South of the Border, South Carolina, having the phrase "Numero Uno" displayed thereon meaning number "one" in Spanish. After seeing the term "Uno" on the billboard advertisement, defendant conceived of the idea of using the term "Uno" in connection with the development of his system for Mexican fast-food restaurants and derived the name "Taco Uno." Mr. Temple selected the mark "Taco Uno" to describe his restaurants as being "number one" or "the best" for Mexican food.

17. Defendant began to convert his existing buildings at Decker Blvd. and Broad Street from Taco Cid restaurants to Taco Uno restaurants in the early part of July of 1981. While the exact date of conversion is uncertain, the new signs displaying the mark "Taco Uno" were installed on or about July 14, 1981, at the outside of defendant's Mexican food restaurant on Decker Blvd. The restaurant on Broad Street in Sumter was opened later in July, 1981, under the mark "Taco Uno." Initially, both restaurants were owned by Mr. Temple but were later sold. As franchisor of the mark "Taco Uno," he entered into franchise agreements with the new owners, which agreements are currently in effect.

18. Defendant first became aware of Registration No. 1,089,458 for "Pizzeria Uno" on or about August 7, 1981. In the latter part of July, 1981, defendant had a trademark registrability search performed in the United States Trademark Office to determine if any trademark registrations existed which would be "confusingly similar" to defendant's adopted mark "Taco Uno." Defendant desired to determine whether registration of "Taco Uno" would be possible in the Trademark Office as defendant's service mark. As a result of the search reported to defendant on August 7, 1981, defendant first became aware of Trademark Registration No. 1,089,458 for "Pizzeria Uno." On August 31, 1981, the defendant filed an application for trademark registration in the United States Patent and Trademark Office for the mark "Taco Uno" for restaurant services. This application bears a Serial No. 325,784 and a filing date of August 31, 1981.

19. Registration was denied initially, it being determined by the Trademark Office that the mark "Taco Uno" was confusingly similar to the mark "Pizzeria Uno." The defendant, through his attorney, then filed a response to the refusal of the Trademark Office to register the mark "Taco Uno." After considering the defendant's arguments made in his response, the Trademark Office reversed its prior decision and, on October 26, 1982, the defendant's application for the mark "Taco Uno" was published in the Official Gazette by the United States Patent and Trademark Office as appearing to be entitled to registration. In so doing, the Trademark Office reconsidered Registration No. 1,089,458 for "Pizzeria Uno" and concluded no confusing similarity would exist between "Pizzeria Uno" and "Taco Uno."

20. The defendant advertises by means of the signs displayed at the restaurants, newspaper ads placed in Columbia and Sumter papers and radio commercials aired by a Sumter radio station.

21. While defendant's two restaurants are located in close proximity to two military bases in Columbia and Sumter, there was no evidence to indicate that any military personnel, transient by necessity of assignments, ever confused a Taco Uno with one of plaintiff's Pizzeria Uno restaurants.

22. The word "uno" means number one in the Italian and Spanish languages and laudatory aspects are associated with its use. Literally translated the word is used in the English language to indicate that something is "the best" or is worthy of compliment and praise. The word is variously used in other context. A town in Arkansas has been given the name "Uno." A Massachusetts corporation, not involved in the food service industry, has taken the name of Uno, Corp.

The term "king," which is in many respects laudatory like "uno," is commonly employed in the food industry by restaurants specializing in a food product such as Pizza King, Taco King, Burger King, Waffle King, and Weiner King. Separate Trademark Registrations have been issued by the United States Patent and Trademark Office for marks identifying these different restaurant services. (Pizza King, Registration No. 639,117, Taco King, Registration No. 1,210,972, Burger King, Registration No. 1,076,177, Waffle King, Registration No. 1,041,416).

23. The plaintiff's registered mark is set forth at United States Patent Office Registration No. 1,089,458. As shown below, it consists of the words "pizzeria uno" spelled out in plain, capital letters of equal size.

## PIZZERIA UNO

Primary examples of the mark as used by the plaintiff in its business are shown below and on page 391.

Say the word for the number one: Uno.

Uno's baked the world's first deep dish pizza at the corner of Wabash and Ohio in Chicago in 1943, and it's been first in the hearts and mouths of pizza perfectionists ever since.

They love the rich, crisp crust filled with the freshest vegetables, meats, cheeses and spices.

They applaud the ingenious creations like our Mexican, delicatessen, or steak and cheese pizzas.

Why don't you stop in soon and sample the world's most celebrated pizza and our wonderful soup, salad, sandwich and beverage selection, served up by the friendliest hosts, waiters, waitresses, and bartenders, in a delightfully casual atmosphere.

Then you'll be saying the word for the number one: Uno!

Your address here.     Your hours here.

**Uno.**

**What else would you call the #1 pizza?**

≈ PIZZERIA ≈

**UNO**

IKE SEWELL'S ORIGINAL CHICAGO PIZZERIA

Your Address Here

The defendant's mark consists of the words "taco uno." The mark as used by the defendant in his business is shown below. It consists of a large numeral one with the words "Taco Uno" spaced within the boundaries of the numeral one. A flower design is placed between the word "Taco" and the word "Uno." The words "Mexican Foods" appear at the base of the numeral one.

Photographs of a typical "Taco Uno" restaurant depicting the presentation of the mark on defendant's sign are shown below and on page 393.

## CONCLUSIONS OF LAW

1. To the extend that any Findings of Fact are deemed Conclusions of Law, they are incorporated herein.

2. This court has jurisdiction over the parties and the subject matter of this cause pursuant to 28 U.S.C. § 1338 and 15 U.S.C. § 1121.

3. In this circuit, the elements of trademark infringement and unfair competition have been set forth in *John Walker & Sons,* *Ltd. v. Bethea,* 305 F.Supp. 1302, 1309 (D.S. C.1969):

> The elements of both actions are decidedly similar and the courts often lump them together and discuss them as one cause of action. However, there is a distinction between the two forms of action. It is often said that the law of trademark infringement is part of and included in the broader law of unfair competition. However, the law of trademarks is governed by federal statutes, while the related law

of unfair competition is of common law origins. See *Brooks Bros. v. Brooks Clothing of California, Ltd.,* 60 F.Supp. 442, 65 USPQ 301 (S.D.Calif.1945); *Scriven v. North,* 134 F. 366 (4th Cir.1904); *Stork Restaurant v. Sahati,* 166 F.2d 348, 76 USPQ 374 (9th Cir.1948).

It is clear that the action for unfair competition does embrace the law of trade-mark infringement and extend beyond it. Trademark infringement is a statutory action provided for under the Lanham Act (or Trademark Act, 15 U.S.C. §§ 1051 et seq.), while unfair competition is a somewhat more comprehensive field, developed under the common law. Being an equitable action developed by case law the court has a great deal more flexibility and may consider a wider number of factors in an unfair competition controversy. Possible confusion in the minds of the buying public is at the core of the law of trademark infringement. Likewise, the hallmark of that portion of the law of unfair competition which deals with trademarks is possible confusion as to the source of goods. *Stork Restaurant v. Sahati,* 166 F.2d 348 (9th Cir.1948); *Brooks Bros. v. Brooks Clothing of California, Ltd.,* 60 F.Supp. 442 (D.C.Cal.1945), aff'd 158 F.2d 798, cert. den'd, 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840; *Safeway Stores, Inc. v. Safeway Properties, Inc.* [307 F.2d 495 (2nd Cir.1962)] *supra.* Additionally, factors bearing on unjust enrichment are frequently considered by the courts in unfair competition controversies.

4. The test for trademark infringement has been enunciated more recently in *Holiday Inns, Inc. v. Holiday Inn,* 177 USPQ 640, 646 (D.S.C.1973), aff'd, 498 F.2d 1397, 182 USPQ 129 (4th Cir.1974).

The test for trademark infringement set forth in 15 U.S.C. 1114(1), is whether the use of the accused copy or colorable imitation of the registered mark is 'likely to cause confusion, or to cause mistake, or to deceive.' The test is to be applied with regard to the effect of the marks on an ordinary purchaser having an indefinite recollection of the mark to which he has

been exposed on a previous occasion. *Standard Oil Co. (Kentucky) v. Humble Oil & Refining Co.,* 363 F.2d 945, 150 USPQ 312 (5th Cir.1966); *Dwight S. Williams Co., Inc. v. Lykens Hosiery Mills, Inc.,* 233 F.2d 398, 109 USPQ 328 (4th Cir.1956). A side-by-side analysis of the marks is not the proper test. *Sterling Drug, Inc. v. Lincoln Laboratories, Inc.,* 322 F.2d 968, 139 USPQ 31 (7th Cir.1963).

■ 5. Mere possibility of confusion is not sufficient, *AMP Inc. v. Foy,* 540 F.2d 1181, 1186 (4th Cir.1976), a probability of likelihood of confusion must be established. *See also* 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23:1, at 36.

6. "The governing standard in trademark infringement actions is 'likelihood of confusion.'" *King-Size, Inc. v. Frank's King Size Clothes, Inc.,* 547 F.Supp. 1138, 216 USPQ 426, 444 (S.D.Tex.1982), citing *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.,* 656 F.2d 186, 189 (5th Cir.1981); (additional citations omitted).

7. "A trademark is infringed if use of the allegedly infringing mark is likely to cause confusion or mistake, or to deceive purchasers or users as to the source, endorsement, affiliation or sponsorship of the product." *King-Size, Inc. v. Frank's King Size Clothes, Inc., supra,* citing *Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 770 (5th Cir.1980), cert. denied, 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980); (additional citations omitted).

8. The ultimate issue in the case at hand is whether purchasers are likely to be confused, misled or deceived that the defendant's food products are associated with, endorsed by or emanate from the plaintiff. *Vitek Systems, Inc. v. Abbott Laboratories,* 675 F.2d 190, 192 (8th Cir.1982), citing *SquirtCo. v. Seven-Up Co.,* 628 F.2d 1086, 1090–91 (8th Cir.1980).

■ 9. The issue of likelihood of confusion is analyzed by reference to the product's typical buyer. *Kentucky Fried Chicken v. Diversified Packaging,* 549 F.2d 368,

389 (5th Cir.1977). As one commentator has stated:

> To arrive at a realistic evaluation of the likelihood of buyer confusion, the court must attempt to re-create the conditions under which prospective purchasers make their choices. A court should not indulge in a prolonged and minute comparison of the conflicting marks in the peace and quiet of judicial chambers, for this is not the context in which purchasers are faced with the marks. 2 J. Thomas McCarthy, *supra*, § 23:17, at 64.

■ 10. In order to resolve this issue of likelihood of confusion, the court must consider an "amalgam of factors." *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d at 189. These factors are:

(a) the type of trademark, *i.e.*, the "distinctiveness" or "strength" of the mark;

(b) the similarity of the trademarks;

(c) the similarity of products and services;

(d) the similarity of the facilities utilized by the parties in conducting their businesses;

(e) the similarity of advertising media used by the parties in promoting their businesses;

(f) the defendant's intent; and

(g) actual confusion. *Id.*

■ 11. *Type of Trademark.* This first factor involves an inquiry into the "strength" or "distinctiveness" of a particular trademark which is important in determining the scope of protection the trademark should be accorded. *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 504 (5th Cir.1980). For purposes of analysis, the courts have defined four categories of terms. In ascending order of strength, these categories are: (1) generic terms, (2) descriptive marks, (3) suggestive marks and (4) arbitrary or fanciful marks. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982). Professor McCarthy has observed:

> The fanciful-suggestive-descriptive continuum has often been used by the courts to reach a conclusion that a given mark is

either 'strong' or 'weak.' That is, a purely fanciful, coined mark is labelled as 'strong' while a descriptive mark is called 'weak.' Strong marks are given 'strong' protection—protection over a wide range of related products and variations on appearance of the mark. Weak marks are given a narrow range of protection both as to products and as to visual variations. 1 J. Thomas McCarthy, *supra*, § 11:24, at 398–99.

In this case, the court first must determine the "strength" or "distinctiveness" of the mark "Pizzeria Uno." As defined by Professor McCarthy:

> [A] mark is 'descriptive' if it is descriptive of: the intended purpose, function or use of the goods; of the size of the goods, of the class of users of the goods, of a desirable characteristic of the goods, or of the end effect upon the user.
>
> Marks which are merely 'laudatory' and descriptive of the alleged merit of a product are also regarded as being 'descriptive.' 1 J. Thomas McCarthy, *supra*, § 11:5, at 353.

■ The two words comprising the mark "Pizzeria Uno" are descriptive. The word "pizzeria" means "an establishment (as a bakery, restaurant, shop) where pizzas are made and sold." *Webster's Third New International Dictionary of the English Language Unabridged* at 1727 (1981). The word "uno" in the Italian language means the number one translated into English. *The Random House Dictionary of the English Language Unabridged* at 1810 (1967). The mark "Pizzeria Uno" connotes the number one or best restaurant specializing in pizzas and other Italian cuisine items. At trial, Mr. Aaron Spencer, the president of the plaintiff corporation, testified that the word "uno" is used to signify number one—synonymous with the best, number one. Indeed, on its T-Shirts made available to its employees and sold to the public, plaintiff presents itself as follows: "Say the Word for Number One: UNO." Moreover, during the course of discovery, agents for the plaintiff stated that it uses the word

"uno" to indicate "the first, or number one in its field (Italian foods) and the best. ...." (Interrogatory No. 12, Plaintiff's Answers to Defendant's First Set of Interrogatories, filed November 5, 1982.)

Descriptive marks are weak marks entitled only to a narrow range of protection unless secondary meaning is proven. 1 J. Thomas McCarthy, *supra*, § 11.5, at 352; *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245 (4th Cir.1970). In order to acquire exclusive protection for the word "uno," the plaintiff must show that a secondary meaning has been established for the word in the minds of the consumers in the defendant's asserted market area—Columbia and Sumter, South Carolina. The plaintiff " 'must show more than a subordinate meaning which applies to it. Plaintiff must show that the primary significance of the terms in the minds of the consuming public is not the product but the producer.' " *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F.Supp. at 1138, 216 USPQ at 442; quoting *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). Plaintiff's assertion that "uno" has become signature is not supported by the weight of the evidence.

The plaintiff has presented no evidence which would support a finding that the word "uno" has acquired a secondary meaning in the Columbia-Sumter, South Carolina, market area. No consumer surveys or testimony was offered at trial to show that the typical purchaser in this market area has come to associate the word "uno" with the plaintiff corporation and its food products and services. Consequently, the court concludes that the word "uno" is used descriptively by the plaintiff, and since it has not taken on a secondary meaning in the pertinent market area, it should be given only narrow protection. The court concludes that this narrow scope of protection does not preclude the defendant from using the term "uno" to describe his Mexican food products as being "number one" or "the best" in their field.

When the common element between two marks is a word which is "weak," the likelihood of confusion between the marks is reduced. *Conde Nast Publications, Inc. v. Miss Quality, Inc.*, 507 F.2d 1404, 184 USPQ 422 (Cust. & Pat.App.1975); *Quaker Oats Co. v. General Mills, Inc.*, 134 F.2d 429, 56 USPQ 400 (7th Cir.1943). The word "uno," the common element in the marks at issue here, has laudatory connotations and is entitled only to a narrow scope of protection. Other courts have held consistently that laudatory words such as "exquisite," "queen," "royal," "best," "supreme," and "king" are descriptive words which indicate high quality with regard to the goods or services with which they are used. As a result, trademarks are not held to be confusingly similar simply because each of them includes the same descriptive word. *Supreme Wine Co. v. American Distilling Co.*, 310 F.2d 888, 135 USPQ 481 (2d Cir.1962); *Sears, Roebuck and Co. v. Hofman*, 258 F.2d 953, 46 Cust. & Pat.App. 708, 119 USPQ 137 (Cust. & Pat.App.1958); *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London*, 378 F.Supp. 403, 183 USPQ 666 (S.D.N.Y.1974); *Queen Knitting Mills, Inc. v. Highland Queen Sportswear Limited*, 173 USPQ 54 (TTAB 1972).

In summary, the evidence indicates that the word "uno" as used by the plaintiff is a "weak mark" and the inclusion of this term in the marks of the two parties does not weigh in favor of a finding of likelihood of confusion. *AMP Inc. v. Foy, supra.*

12. *Similarity of the Marks.* A determination of this second factor is reached by considering the overall effect of the marks and not simply by comparing individual features of the marks. As stated in the findings of fact, plaintiff's registered mark consists of the words "Pizzeria Uno." Obviously, a degree of similarity exists between the two marks due to the common use of the word "uno." However, when considering the overall effect of the two marks, there is no likelihood of confusion. This conclusion is consistent with the prior ruling of the United States Patent and Trademark Office finding that there is no likeli-

hood of confusion between the marks "Pizzeria Uno" and "Taco Uno." While not conclusive, this ruling, which was arrived at by Trademark Office examiners who are experts in applying the test of likelihood of confusion between two marks, is entitled to great weight. *Syntex Laboratories, Inc. v. Norwich Pharmaceutical Co.*, 437 F.2d 566, 569 (2d Cir.1971). Similarly, the Fourth Circuit Court of Appeals has stated that the expertise of the Securities and Exchange Commission in determining whether similar corporate names are likely to confuse investors "should not lightly be put aside." *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1251 (4th Cir.1970).

The court is of the opinion that the typical consumer, upon encountering the mark "Taco Uno" would take it at its face meaning and not equate or associate the mark "Taco Uno" with the mark "Pizzeria Uno." Since there is no significant similarity in the two marks, this second factor weighs against a finding of likelihood of confusion. Simply stated, the terms or names "Pizzeria Uno" and "Taco Uno" create different commercial impressions. *Burger Chef Systems, Inc. v. Sandwich Chef, Inc.*, 608 F.2d 875 (Cust. & Pat.App.1979).

13. *Similarity of Products, Services and Facilities.* The court next addresses the third and fourth factors; *i.e.,* whether there is similarity between the products and services provided by the parties and whether there is similarity between the business facilities utilized by the parties. Since these two factors are closely related, they are considered together. The greater the similarity between the products and services, the greater the likelihood of confusion. *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d at 505. Also, similarities between the type of facility used by the parties to distribute products to the consuming public is relevant to the issue of likelihood of confusion. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 262 (5th Cir.1980).

The plaintiff's restaurants specialize in Italian cuisine and are most noted for their deep-dish style, thick-crusted pizza which was sold first in 1943 by Ike Sewell in his Chicago, Illinois, restaurant named "Pizzeria Uno." The plaintiff's establishments also sell other food and beverage items, including sandwiches, soups, salads, desserts, beers, wines, and alcoholic (mixed drinks) beverages. Mr. Spencer testified that pizza sales are 47% of the plaintiff's business. With reference to the type of facilities utilized by plaintiff and its franchisees to conduct business, Mr. Spencer described the restaurants as "up-grade" or "up-scale" facilities, a term used in the food service industry to distinguish a full-service restaurant from the typical fast-food eating establishment. (Findings of Fact, Nos. 6, 7 & 8). As to the type of services provided by the plaintiff and its franchisees, Mr. Spencer described what are commonly regarded as the general characteristics of a full-service restaurant. While plaintiff's restaurants do provide a customer pick-up service, the predominant method of conducting business is by way of sit-down, table service. Upon entering a Pizzeria Uno restaurant, patrons are greeted by a host/hostess, are seated at individual tables and are served by a waiter/waitress. Customers order from individual menus. Alcoholic beverages are prepared by bartenders and served by cocktail waitresses.

By contrast, the defendant's two restaurants cannot be described as sit-down, "up-grade" restaurants. Rather, the two facilities are typical of what the American public has come to refer to as "fast-food" restaurants. The food and beverage items on the defendant's Mexican cuisine menu are sold "over-the-counter" or by means of a "drive-thru-window." Customers can eat on the premises or make their purchases "to go." The emphasis is on quick, convenient service as opposed to the sit-down, relaxed atmosphere promoted by the plaintiff.

In summary, it is true that both parties are in the restaurant business on the same retail level. However, the significant differences discussed above as to food products

sold, services provided and facilities used reduce considerably the possibility of consumer confusion. The third and fourth factors weigh against a finding of likelihood of confusion. Again the conclusion is inescapable, the names "Pizzeria Uno" and "Taco Uno" create different commercial impressions.

14. *Identity of Advertising Media.* This fifth factor calls for an inquiry into the similarity between the parties' advertising campaigns. "The greater the similarity in the campaigns, the greater the likelihood of confusion." *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d at 506.

As discussed in the findings of fact, there is similarity in the advertising media used by both parties. The defendant advertises chiefly by means of newspaper and radio ads; the plaintiff also by newspaper and radio ads (among other media). However, there is a notable difference in the advertising campaigns of the parties. The plaintiff engages in broadly based, national advertising, while the defendant's advertising efforts are directed only at the Columbia-Sumter, South Carolina, market area. To the extent that the plaintiff does advertise in the South, its focus is on the Atlanta, Georgia, market area where a Pizzeria Uno franchise is located. The plaintiff does not advertise in South Carolina. Since the typical consumer in the Columbia-Sumter market area would not be aware of Pizzeria Uno's advertising campaign, it is unlikely that any confusion would result from the advertisements of the parties. In that the names create different commercial impressions, advertising by both parties in the same market area is unlikely to cause confusion, to cause mistake or to deceive the public. Mere possibility of confusion is not sufficient—a probability must be established. *AMP Inc. v. Foy,* 540 F.2d 1181, 1186 (4th Cir.1976).

15. *Defendant's Intent.* The intent of the defendant in adopting the mark "Taco Uno" is an important factor in determining whether there is likelihood of confusion. 2

J. Thomas McCarthy, *supra,* § 23:31, at 103. "If ... a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'" *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d at 506, citing Restatement of Torts § 729, Comment f (1938); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252 (5th Cir.1980).

In the case at hand, the evidence indicates that the defendant had no actual knowledge of the plaintiff's mark "Pizzeria Uno" at the time he selected his mark "Taco Uno" in the spring of 1981. Although Mr. Temple worked in and around the Chicago, Illinois, area in 1974 while serving as regional manager of the north central region for Pizza Hut, Inc., he never heard of Ike Sewell's Pizzeria Uno restaurant. The evidence further shows that the defendant first had actual knowledge of the United States Trademark Registration No. 1,089,458 for "Pizzeria Uno" on August 7, 1981, when the results of a trademark registrability search performed in the United States Patent and Trademark Office were reported to him by retained counsel. This was subsequent to defendant's adoption of the mark "Taco Uno" in July, 1981.

The court concludes that the defendant's purpose in adopting the mark "Taco Uno" was not to derive benefit from the plaintiff's goodwill and reputation. Accordingly, this factor weighs against a finding of likelihood of confusion.

16. *Actual Confusion.* "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d at 263, citing *RotoRooter Corp. v. O'Neal,* 513 F.2d 44, 46 (5th Cir.1975). *See also* 2 J. Thomas McCarthy, *supra,* § 23:2, at 37–8. The plaintiff has admitted that it knows of no instances of actual confusion between the marks "Pizzeria Uno" and "Taco Uno" as used by the

parties for their restaurant services. (Admission No. 5, Plaintiff's Answers to Defendant's First Request for Admissions.) Moreover, at trial, Mr. Spencer testified that he knew of no instances where someone has referred to a "Taco Uno" restaurant as "Unos." In that the plaintiff has presented no evidence of actual confusion, the court concludes that this factor weighs against a finding of likelihood of confusion. *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1136 (2d Cir.1979).

17. Based upon the foregoing factors, the court is of the opinion that the plaintiff has failed to establish its first cause of action for trademark infringement by a preponderance of the evidence, and accordingly the court concludes that there is no likelihood of confusion between the plaintiff's mark "Pizzeria Uno" and the defendant's mark "Taco Uno." Further, the court concludes that the defendant's use of the mark "Taco Uno" is not likely to cause confusion, mistake or deception as to the source, endorsement, affiliation or sponsorship of its food products. 15 U.S.C. § 1114(1).

18. In addition to the first cause of action for federal trademark infringement under 15 U.S.C. § 1114(1), the plaintiff alleged a second cause of action for federal unfair competition under 15 U.S.C. § 1125(a) and a third cause of action for common law unfair competition. Consistent with this court's conclusions that no likelihood of confusion exists between the parties' trademarks and that the defendant is not "palming off" his food products as being associated with or sponsored by the plaintiff, the court is of the further opinion that the plaintiff's second and third causes of action fail. The hallmark of unfair competition in the context of trademarks is likelihood of confusion. *John Walker & Sons, Ltd. v. Bethea,* 305 F.Supp. 1302 (D.S.C.1969).

19. As a part of its requested relief, plaintiff sought an injunction enjoining defendant from using the name "Taco Uno"—obviously only the word "uno" as the evidence at trial developed. While not necessary to the court's decision as opined above, even if there were confusion between the respective marks and usages, the plaintiff would not be entitled to injunctive relief. *Armand's Subway, Inc. v. Doctor's Associates, Inc.,* 604 F.2d 849, 203 USPQ 241 (4th Cir.1979); *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358, 121 USPQ 430 (2d Cir.1959). The *Dawn Donut* court held that trademark protection is only potential in areas where the registrant in fact does do business. Under this rationale, a competing user could use the mark in that area until the registrant extended its business into that area, at which time the registrant would be entitled to exclusive use of the mark and to injunctive relief against its continued use *by prior users* (emphasis added) in that area. While plaintiff may have received inquiries from prospective franchisees in South Carolina, plaintiff has not yet extended the use of its mark "Pizzeria Uno" into South Carolina by locating restaurants within the state or expanding its advertising campaign to cover South Carolina.

20. For the foregoing reasons and based upon the cited authorities, IT IS ORDERED that the plaintiff's complaint be and the same hereby is dismissed and that judgment be and the same hereby is granted in favor of the defendant and against the plaintiff. Costs are assessed against plaintiff.