**AMP INCORPORATED, Appellant,**

v.

**Howard J. FOY, Jr., et al., Appellees.**

No. 74–2215.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1975.

Decided Feb. 10, 1976.

Floyd A. Gibson, Charlotte, N. C. (James D. Myers, Charlotte, N. C., Charles B. Elderkin, Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., on brief), for appellant.

James L. Roberts, Charlotte, N. C., for appellees.

Before WINTER and WIDENER, Circuit Judges, and MERHIGE, District Judge.*

WIDENER, Circuit Judge:

Plaintiff-appellant, AMP Incorporated, sued to enjoin defendant, Howard J. Foy, et al., doing business as Amp Electric Company, from using the term "Amp" as a part of its business name. Plaintiff's causes of action are based both upon Title 15 U.S.C. § 1114, for infringement upon its registered trademark, and also for infringement by

defendant of plaintiff's trade name. The district court held that neither alleged cause of action has been sustained and denied relief.

The denial of damages is not appealed from, but the denial of injunctive relief is. We remand for further consideration in the light of this opinion.

Plaintiff has been in business since 1941, and, since 1956, has operated under the name "AMP Incorporated." The term "AMP" is an acronym derived from the capital letters of plaintiff's original name, "Aircraft Marine Products, Inc." Plaintiff manufactures and distributes about 35,000 electrical and related products which are component parts to be used in electrical circuits for aircraft, boats, and home, and for other electrical appliances. Its largest customers are power companies, discount houses, and manufacturers of electrical appliances. The products manufactured by plaintiff are also sold to national chain stores, including Sears, Roebuck & Co., Woolco, Grant's, J. C. Penney, and others, and various electrical supply houses, for sale to the consuming public.

Products manufactured by plaintiff carry the trademark AMP which has been protected by seventeen United States Trademark Registrations. The validity of these registrations is conceded and is not in issue. This trademark "AMP" appears upon all of plaintiff's products.

Plaintiff operates a facility in Charlotte, North Carolina, which manufactures component parts for electrical apparatus, as well as distribution or manufacturing facilities in six other locations in North Carolina. The Charlotte plant has been in operation for eight years and employs one hundred and fifty-eight people. Many of these employees were obtained as the result of advertisements placed in Charlotte newspapers. Plaintiff's products are distributed in Charlotte through a number of retail outlets. Those which are sold by Sears, Roebuck & Co., are in Sears' packages but have the trademark AMP on them.

* United States District Judge for the Eastern District of Virginia, sitting by designation.

The principal defendant, Howard J. Foy, operates as a sole proprietorship under the name Amp Electric Company. Foy is engaged in the business of electrical contracting. He wires houses and apartments, adds extra circuits for dryers, air conditioners, dishwashers and disposals, and repairs electrical appliances such as water heaters, ranges and electrical heating units.

In July or August, 1972, a prior partnership between Howard J. Foy and Cyrus L. Foy was dissolved. This partnership had operated under the name of Ace Electric and American Electric Company. After the dissolution, defendant, Howard J. Foy, thought that a new name should be used. He selected the name "Amp Electric Company" ostensibly in order to have a name near the top of the alphabet so as to have a priority listing in the telephone book. The evidence fully sustains the trial court's finding that at the time of selecting the designation Amp, Foy was aware that plaintiff had been operating in the Charlotte area as "AMP Incorporated."

■ The opinion of the district court is basically predicated upon three grounds:[1] (1) that a trademark registration does not confer a monopoly of use upon the registrant, (2) that plaintiff and defendant were not competitors, and thus there was no element of unfair competition, (3) that defendant's use of the word "Amp" was not likely to confuse plaintiff's customers. We agree with the district court as to the first two grounds. The main thrust of its decision, however, is found in the third ground. We

remand because we hold that the district court used too restrictive a standard. The test is not only the danger that defendant's use of the term "Amp" will confuse plaintiff's customers, but the likelihood of danger that such use will confuse the public in general, including plaintiff's customers, defendant's customers and other members of the public.

■ The district court was correct in its conclusion that registration of a trademark does not create a legal monopoly. In that sense, a trademark differs from a patent or copyright. *United Drug Co. v. Rectanus Co.*, 248 U.S. 90, 97, 98, 39 S.Ct. 48, 63 L.Ed. 141 (1918); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir. 1973); cert. den. 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1974); *Artype Inc. v. Zappulla*, 228 F.2d 695 (2nd Cir. 1956).[2]

■ We also agree that there was no competition between plaintiff and defendant. Thus, cases in which unfair competition was involved are in point only in so far as they can be predicated additionally upon some other basis. However, the absence of competition is no bar to relief if a legitimate basis is otherwise available. Thus, in *Fleischmann Distilling Corp. v. Maier*, 314 F.2d 149 (9th Cir. 1962), defendant brewing company was enjoined from using the name "Black and White" for its beer, which had already been long applied to Scotch whisky imported and sold by plaintiff. Although there was no competition between the parties, the use of the same name for their respective products was held likely to confuse the public.[3]

---

1. Among others, the following findings were expressly made by the district court:

   "I find that the word 'amp' has not in this area acquired a secondary meaning indicating plaintiff as the origin or source of electrical products.

   "Although I find the defendant in his small way to be as hardnosed and intransigent as plaintiff is in its large way, I do not find that there was any intention or expectation that his use of the term 'amp' in his business would enable defendant to capitalize on any good will, publicity, trade or other asset which plaintiff might have built up in this part of the world."

Earlier in the opinion, the court states:

   "I also find that there is nothing ingenuous about the circumstances under which defendant adopted the name 'Amp' for his electrical repair business; the question is not defendant's ignorance of the prior use of the word 'Amp' by plaintiff, but whether, knowing that plaintiff was using the word, defendant can nevertheless also use it."

2. In the last cited case, Judge Learned Hand states at p. 696: "A trade-mark is indeed often spoken of as a monopoly; but in fact it is only part of the protection of the owner's business from diversion to others by means of deceit."

3. See also *Beef/Eater Restaurants v. James Burrough, Ltd.*, 398 F.2d 637 (5th Cir. 1968), in

## I

■ Plaintiff's claim for trademark relief is based upon Title 15, U.S.C. § 1114, which provides as follows:

"(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

\*   \*   \*   \*   \*   \*

shall be liable in a civil action by the registrant for the remedies hereinafter provided.   .   .   . "

This statute had undergone considerable change.[4] It was first enacted by the Trademark Act of 1905. Under the 1905 statute, a trademark was protected only from a similar mark being placed on "[goods] of the same descriptive properties." The Lanham Act, passed in 1946,[5] granted protection against the use of marks "likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such goods or services." It now became clear that the protection received by a registrant's trademark is not limited to cases of unfair competition, and exists between parties not in competition with each other. The public is protected from being confused as to the sponsorship of goods or services purchased. The trademark registrant could be harmed by such popular confusion because inferior service by the infringer might be attributed to the registrant.

We reverse primarily on the authority of *Communications Satellite Corp. v. Comcet,*

*Inc.,* 429 F.2d 1245 (4th Cir. 1970). In that case, the plaintiff, Communications Satellite Corporation, started using "Comsat" as its trade name shortly after its incorporation in 1963 and as its service mark in 1964. Comsat alone is authorized to use satellites in connection with inter-continental communications. The defendant, Comcet, Inc., develops, manufactures, and sells communications computers which receive data over telephone and teletype lines, edit and verify the information, and relay it to data processing computers. Suit was for an injunction based both upon the theory of trade name infringement and trademark infringement. Relief was denied in the district court, but this court reversed and ordered that an injunction be issued, holding that plaintiff was entitled to relief upon both theories.

*Communications Satellite Corp. v. Comcet, Inc.* is quite similar to the case here in that in both cases plaintiff and defendant are not in direct competition. In both cases, the plaintiff was the first to use the trade name and trademark. Although the parties did not compete, their services and products are in related fields: communications in *Communications Satellite Corp.,* and electricity in the case at bar. The two cases are different in that the term "Comsat" had acquired a secondary meaning, whereas the term "Amp" has not.

As in this case, the injunction granted in *Communications Satellite Corp.* could not be based upon either a monopoly or an unfair competition theory. The court based its decision upon the likelihood to confuse and stated at p. 1252:

"When, as here, the parties are not competitors, the issue of infringement hinges

---

which defendant was not allowed to use the term "Beefeater" in connection with its restaurants when that term had already long been used to designate plaintiff's gin, notwithstanding the fact that the two parties were not in competition. We note, however, that case was based in part upon the fact that plaintiff's term had acquired a secondary meaning, which was not true here.

4. See *HMH Publishing Co., Inc. v. Brincat,* 504 F.2d 713, at 716, 717, fn. 7 (9th Cir. 1974); annotations to 15 U.S.C.A. § 1114.

5. 60 Stat. 427, 15 U.S.C. § 1051 et seq. The Lanham Act was amended in 1962 by eliminating the words "purchasers as to the source of origin of such goods or services" following "or to deceive" in § 1114(1)(a). The deletion of the language, so far as this case is concerned, may only broaden the protection afforded.

on the likelihood of confusion about the source or sponsorship of the defendant's goods and services . . . "

and again at p. 1253:

"Complementary products, or services, are particularly vulnerable to confusion . . . [citation omitted]. A reasonable person may well believe that Comcet's communications computers come from a source related to Comsat's communications services . . .

\* \* \* \* \* \*

"We conclude, therefore, that the evidence establishes sufficient likelihood of confusion among prospective purchasers about the source or sponsorship of Comcet's computers to justify protection of Comsat's service mark."

It will be noted that the court emphasized confusion of defendant's customers, not plaintiff's customers as emphasized by the trial court in this case.

Another case in which the danger of confusion was stated as the standard in cases such as this is *Tisch Hotels, Inc. v. Americana Inn,* 350 F.2d 609, 613 (7th Cir. 1965). In that case, plaintiff owned the service mark "Americana" which was used in connection with hotel operations in Miami Beach, Florida, New York City, and San Juan, Puerto Rico. The defendant operated two motels under the name "Americana" in the Chicago area. The district court denied relief to plaintiff on the ground that "Americana" plaintiff and defendant were not in direct competition and that "Americana" is a widely used common word. In reversing, the court stated at page 612:

"Plaintiffs do not contend that they and defendants are in direct competition or that there is a likelihood that a traveler will become confused and register at defendants' motel in Chicago thinking it is the Miami Beach Americana. Their position is that a prospective patron seeing the 'americana' mark on defendants' motel would be likely to confuse it with the same mark used by plaintiffs, and that, being confused as to the source of the

services, if the patron is dissatisfied with defendants' services, plaintiffs would suffer, since their 'reputation is no longer within [their] own control and there is an injury, unless there is a clear distinction between the marks.' *Yale Electric Corp. v. Robertson,* 26 F.2d 972, 973 (2d Cir. 1928). As the Ninth Circuit in *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d at 159, said as to infringement: 'The question is, are the uses related so that they are likely to be connected in the mind of a prospective purchaser.' We conclude, 'as our reactions persuade us,' *Colburn v. Puritan Mills, Inc.,* 108 F.2d at 378, and there was, and is, this likelihood."

The case of *HMH Publishing Co., Inc. v. Brincat,* 504 F.2d 713 (9th Cir. 1974), is also persuasive. In that case, the plaintiff was the publisher of the magazine Playboy and the operator of Playboy Clubs International. Suit was to enjoin defendant from operating five businesses dealing in automotive products from operating under the name "Playboy," and using HMH's mark "Bunny" in connection therewith. It was held that, while the term Playboy, standing alone, had had such a long general use that it might not be entitled to the protection claimed, that term, used in conjunction with the mark "Bunny," did indicate an intention to exploit plaintiff's goodwill, and thus would support the inference of likelihood to confuse.

*HMH Publishing Co.* is distinguishable from our case in at least two particulars. First, the conjunction of the terms Playboy and Bunny, taken together, was more associated with HMH than the term Amp is with the present plaintiff. Second, a secondary meaning of a sort had been established.

■■■■ Notwithstanding these distinctions, a number of propositions of law pertinent to this case are recited in *HMH Publishing Co.* First, one of the purposes of trademark protection is to protect purchasers from being misled as to the identity of the enterprise from which goods and services are obtained.[6] Second, the test is "like-

---

**6.** 504 F.2d 713, at 716 (9th Cir. 1974).

lihood to confuse." Mere possibility of confusion is not sufficient. At the other extreme, actual confusion is not required.[7] Third, evidence of actual confusion is support of a likelihood of confusion.[8] Fourth, the strength or weakness of the mark in question is an important consideration. The more general the current use of a mark, the weaker it is, and vice versa. Fifth, "the mere registration [of a trademark] cannot entitle the registrant to capture the entire commercial utility of  .   . a widely known concept."[9] Sixth, intent to exploit the good will created by an already registered trademark creates a presumption of a likelihood to confuse.[10] Seventh, although knowledge of prior use does not establish intent, lack of knowledge makes intent more difficult to establish.[11] The case under consideration is a close one. Some of the guidelines suggested by *HMH Publishing Co.* support the position of the plaintiff; others support the position of the defendant.

The principles enunciated in *Communications Satellite* and *HMH Publishing Co.* are applicable here. As in both of those cases, actual competition between plaintiff and defendant is not required. Likewise, both cases establish that the purpose of trademark protection is to protect the public from confusion, not merely to protect plaintiff from confusion of its customers as held by the district court. See also *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792 (5th Cir. 1954).

We are considering a case in which actual confusion was established by the evidence. Although actual confusion is not an essential element in establishing a likelihood to confuse, it is substantial evidence thereof. *HMH Publishing Co.*, at 717–719; *Tisch Hotels* at 612; see *Dwight S. Williams v. Lykens Hosiery Mills*, 233 F.2d 398, 401 (4th Cir. 1956), cert. den. 352 U.S. 840, 77 S.Ct. 61, 1 L.Ed.2d 56 (1956).

An important similarity between this case and *Communications Satellite Corp. v. Comcet* is shown by the following quotation from 429 F.2d 1245, 1251.[12]

"Finally, we reiterate that Comsat coined its name first; Comcet followed. In these circumstances Judge Learned Hand's observation in *Lambert Pharmacal Co. v. Bolton Chemical Corp.*, 219 F. 325, 326 (S.D.N.Y.1915), is pertinent:

'Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field.'"

Here, not only did AMP Inc. use the trademark "AMP" first, but defendant adopted that acronym as part of its trade name with full knowledge that plaintiff had long been using the designation.

Although it is true that *HMH Publishing Co.* places only a negative importance upon defendant's prior knowledge of plaintiff's

---

7. In our case, however, it must be noted that there were instances of actual confusion. This is significant in connection with the next principle announced in *HMH Publishing Co.*

8. 504 F.2d 713, at 717, 719. At the latter page, the court states: ".  .  . Although such a showing [of actual confusion] is not necessary .  .  . it would be determinative in many instances.  .  . ."

9. 504 F.2d 713 at 718. The court quotes with approval from *Esquire, Inc. v. Esquire Slipper Manufacturing Co.*, 243 F.2d 540, 543 (1st Cir. 1957).

10. 504 F.2d 713 at 720.

11. But see the authority, cited *infra* this opinion, which places considerable emphasis upon

defendant's knowledge of plaintiff's prior use of an appropriated designation. We do not find it necessary to express an opinion here upon any apparent divergence between *HMH Publishing Co., supra,* and *Harold F. Ritchie, Inc.,* referred to *infra* on the narrow point of the effect such knowledge should be given, but our opinions in *Communications Satellite Corp.* and *Food Fair Stores, Inc., infra,* would seem to indicate that giving affirmative effect to defendant's knowledge of prior use is not necessarily improper.

12. The language was used in connection with the trade name issue rather than the trademark issue. However, the court regarded the two issues as overlapping. 429 F.2d 1252.

prior use, a respectable body of authority follows the same reasoning as does Judge Hand in *Lambert Pharmacal Co.* In *Harold F. Ritchie, Inc. v. Chesebrough-Ponds Inc.*, 281 F.2d 755 (6th Cir. 1960), the court states at page 758:

"In this circuit and others, numerous decisions have recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer. This principle is well illustrated by *G. D. Searle & Co. v. Chas. Pfizer & Co., Inc.*, 265 F.2d 385, 7th Cir., cert. den. 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed.2d 65 . . . at page 387, quoting verbatim from an earlier decision of the Seventh Circuit, the court said:

'One entering a field of endeavor already occupied by another should, in the selection of a trade name or trademark, keep far enough away to avoid all possible confusion.'"

Other cases in which emphasis is placed upon defendant's knowledge of plaintiff's prior use of the contested mark or name are *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 613 (7th Cir. 1965), and *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156 (4th Cir. 1962) (Virginia law).

The reason assigned by defendant for adopting the word "Amp" as part of its trade name is that it wanted a name starting with "A" so as to be near the top of those electrical contractors listed in the classified directory. That explanation as the sole basis for defendant's choice may be less than persuasive. It is obvious there must be plenty of other suitable names starting with "A". The defendant itself had previously operated under the names "Ace" and "American". If, because of the partnership dissolution, it was considered undesirable to continue use of those names, comparable names starting with "A" are legion. See *Fleischmann Distilling Corp.*, p. 158.

In passing, we note that the word "amp" as an abbreviation of ampere, a unit of current flow of electricity, is in fairly common usage,[13] which may to some extent weaken the strength of the mark.

■ When, as here, the evidence in a case is fairly evenly balanced, it is especially important that legal principles and standards be accurately stated. We reverse the district court not because we feel that its findings of fact are without evidentiary support if its view as to the appropriate legal standards be accepted, but because we hold that the district court based its decision upon too narrow a view as to the likelihood of confusion. We also hold that the district court gave too little weight to the evidence of actual confusion.

We do not go as far as we did in *Communications Satellite Corp. v. Comcet.* There, the trademark Comsat had acquired a secondary meaning. Thus, we reversed and held that the injunction prayed for should be granted. Here, no such clear secondary meaning has been established. Thus, we remand with directions that the district court reconsider the case in the light of this opinion, and, in particular, determine whether defendant's use of the word "Amp" in its trade name is likely to confuse any members of the public, not merely plaintiff's customers.

In thus limiting our reversal, we are not unaware of holdings elsewhere to the effect that the issue of likelihood to confuse is not a pure issue of fact but a matter of proper inferences to be drawn from the evidence. Thus, Rule 52 might not necessarily preclude us from reaching an independent conclusion as to the likelihood of defendant's use of the name "Amp" to confuse the public, including defendant's customers. *Fleischmann Distilling Corp. v. Maier*, 314 F.2d 149 (9th Cir. 1963); *Sears, Roebuck & Co. v. Johnson*, 219 F.2d 590 (3d Cir. 1955). But those were cases in which the trademarks involved had somewhat less common

---

**13.** The district court made a similar finding and, as noted, it found the trademark had acquired no secondary meaning. But it did not state what legal significance, if any, it attributed to these findings or how they were weighed in arriving at its conclusion.

usage than does that involved in this case. We believe that justice will be best served by a reconsideration by the district court which, of course, may take additional evidence should it be so advised.

II

As we have pointed out in *Communications Satellite Corporation v. Comcet*, the issues of trademark and trade name infringement overlapped in that case. The same principle is acknowledged by the North Carolina court in *Charcoal Steakhouse of Charlotte, Inc. v. Staley*, 263 N.C. 199, 139 S.E.2d 185 (1964). And in *Yellow Cab Co. v. Creasman*, 185 N.C. 551, 117 S.E. 787 (1923), the court stated that ". . . the cases on the subject are to the effect further that it will be considered unfair competition when such rival adopts for his own business, etc., a sign or symbol in such apparent imitation of the former as will likely mislead his customers and the public as to the identity of the goods sold or services rendered." 117 S.E. 787, 788.

Since it is apparent the North Carolina law of unfair competition is not dissimilar to the federal law of trademark infringement and the case must be remanded for reconsideration of trademark infringement, the district court should also reconsider its ruling as to trade name infringement under North Carolina law.

*REMANDED.*