POLO FASHIONS, INC., Plaintiff,

v.

The GORDON GROUP, Lionel Gordon, V.C. Matthews, Alley Boy Fashions, Inc., Defendants,

V.C. Matthews Associates, Inc., Additional Defendant,

and

Allan Ackerman, Defendant and Third-Party Plaintiff,

MS. MADAME McGRIFFIN, INC., Additional Defendant and Third-Party Plaintiff,

v.

Lionel GORDON, Third-Party Defendant.

Civ. No. C–83–1291–D.

United States District Court, M.D. North Carolina, Durham Division.

May 14, 1985.

Cynthia Leigh Wittmer, William C. Pappas, Charles C. Meeker, Raleigh, N.C., Morton Amster, Phillip H. Gottfried, New York City, for Polo Fashions, Inc.

J. William Blue, Jr., Chapel Hill, N.C., for the Gordon Group and Lionel Gordon.

David I. Smith, Burlington, N.C., for V.C. Matthews and V.C. Matthews Associates, Inc.

Thomas C. Manning, Raleigh, N.C., Jack B. Swerling, Columbia, S.C., for Allan Ackerman, Alley Boy Fashions, Inc., and Ms. Madame McGriffin, Inc.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This action for trademark infringement and unfair competition arises from the alleged introduction into commerce by Defendants of various items of clothing not manufactured by Plaintiff bearing embroidered emblems which are virtually indistinguishable from portions of Plaintiff's own registered trademarks. Plaintiff, Polo Fashions, Inc., instituted this action seeking injunctive relief and damages against Defendant Lionel Gordon, and has since amended its complaint to include the various other parties defendant. A preliminary injunction has been issued against Defendant Gordon, and the matter is now before the court on Plaintiff's motion for summary judgment on the issue of liability. The Defendants have responded to Plaintiff's motion, Plaintiff has submitted a reply brief to each of the Defendants' responses, and the matter is now ready to be ruled upon. For the reasons stated herein, Plaintiff's motion will be granted with respect to each claim for relief as to Defendants Lionel Gordon, V.C Matthews Associates, Inc., and V.C. Matthews, but will be denied as to Defendants Allan Ackerman, Ms. Madame McGriffin, Inc., and Alley Boy Fashions, Inc.

## I. PARTIES TO THIS ACTION

### A. *Polo Fashions, Inc.*

■ The Plaintiff, Polo Fashions, Inc., is a well-known fashion house which, under the direction of its chairman, Ralph Lauren, styles, manufactures and sells, both directly and through related companies and licensees, diverse articles of men's and women's wearing apparel. Polo uses and owns the trademarks POLO, RALPH LAUREN, POLO BY RALPH LAUREN, and the fanciful representation of a polo player on a horse ("The Polo Player Symbol"), both individually and as composite trademarks including Ralph Lauren and the polo player symbol ("the Ralph Lauren Logo") which it adopted as early as 1967.[1] (The polo player symbol and the Ralph Lauren Logo trademarks are hereinafter collectively referred to as "the Polo trademarks.") Polo establishes and maintains quality and fashion standards for products and services identified by the Polo trademarks. The

---

1. The Defendant Gordon has acknowledged Plaintiff's ownership of various trademarks depicting a horse and rider with accompanying words or phrases, but asserts that the horse and rider, appearing alone, were not registered as a trademark of the Plaintiff and that the marks were not subject to legal protection at the time of the alleged infringement. Of course, whether the fanciful representation of a polo player and a horse was at the time of the alleged infringement entitled to legal protection is a matter of law to be decided by the court.

Polo trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with Polo, and are among the most well-known in the fashion field, according to Defendants' own admissions. Products carrying the Polo trademarks are readily identifiable by members of the purchasing public with Polo.

██ Polo is the owner of several U.S. trademark registrations which are Polo trademarks, including U.S. Trademark Registration Nos. 984,005 of May 14, 1974, for the Ralph Lauren Logo for diverse items of apparel; and 1,050,722 of October 19, 1976, for the Ralph Lauren Logo for diverse items of women's apparel, among others. These registrations are all valid and subsisting.[2]

### B. *Defendant Lionel Gordon.*

Defendant Lionel Gordon ("Gordon") first entered the business of selling embroidered sweaters and shirts in 1979, forming The Gordon Group, a North Carolina corporation, for this purpose. The Gordon Group was not very successful and was dissolved in June of 1981 (prior to the events giving rise to this case). Gordon continued in an individual capacity to buy sweaters, shirts, and other garments, have them embroidered, and distribute them for resale.

### C. *Defendants Allan Ackerman, Alley Boy Fashions, Inc., and Ms. Madame McGriffin, Inc.*

Defendant Allan Ackerman ("Ackerman") is the president of Defendants Alley Boy Fashions, Inc., ("Alley Boy") and Ms. Madame McGriffin, Inc., ("McGriffin"). Alley Boy was incorporated in July 1980 and McGriffin was incorporated in March 1982. Ackerman Sales Corporation, of which Ackerman is the president, is the principal shareholder of Alley Boy and McGriffin. Ackerman makes all the decisions for all three corporations, Alley Boy, McGriffin, and Ackerman Sales. The business premises of Alley Boy and McGriffin are at the same location. While once a jobbing company,[3] McGriffin is presently an inactive corporation that has one account receivable from money loaned to Alley Boy. (Defendants Ackerman, Alley Boy, and McGriffin are hereinafter collectively referred to as "Ackerman Defendants.")

The Ackerman Defendants began purchasing genuine Polo merchandise directly from Polo and from Polo's licensees in 1980. Ackerman purchased genuine Polo knit shirts, leather goods, suits, sportcoats, and sportswear from Polo and its licensees until January 1983, at which time Ackerman decided that Alley Boy was going to manufacture goods rather than operate as a jobber.

### D. *Defendants V. C. Matthews and V. C. Matthews Associates, Inc.*

Defendant V.C. Matthews ("Matthews") is the president of Defendant V.C. Matthews Associates, Inc. ("Matthews Associates"). Matthews Associates was incorporated in North Carolina in January 1982. Matthews Associates brokers yarn, fabric, garments, machinery, and textile-related products.

## II. FACTUAL BACKGROUND

### A. *The Present Action.*

On December 16, 1983, Polo commenced this action, alleging that the sale by De-

---

2. Plaintiff admits that its application to federally register its polo player symbol trademark, absent any writing, is pending. However, the lack of complete registration of the polo player symbol alone is not dispositive. As Plaintiff points out, it is a well established principle that the dominant aspect of a composite mark is separately protectable from the word mark in a composite registration. *See, e.g., Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.,* 592 F.Supp. 648 (D.Mass.1984).

3. Ackerman described the jobbing business as follows in response to a question from counsel for Plaintiff in his deposition:

Q  What exactly is the jobbing business?
A  It's where you buy someone else's finished product and resell it.

(Ackerman Dep., pp. 8–9).

fendant Gordon of garments embroidered with counterfeits and infringements of the Polo trademarks, including the polo player symbol trademark, constituted: (1) a violation of 15 U.S.C. § 1114(1), in that Defendant had infringed trademarks registered in the United States Patent and Trademark Office; (2) a violation of 15 U.S.C. § 1125(a), in that such sales involved the use in commerce of false designations of origin and false descriptions and representations; and (3) unfair competition under the common law.

At his deposition, Gordon identified the other Defendants in this action as having been involved in the embroidering or sale of garments bearing counterfeits and infringements of the Polo trademarks. Polo subsequently amended its complaint to include these Defendants. Defendants' answers essentially deny all the substantive allegations of Polo's amended complaint.

### B. *Defendants' Allegedly Infringing Activity.*

There is no dispute in this case with respect to the fact that Gordon did have garments embroidered with a polo player virtually identical to the fanciful polo player symbol which forms a portion of several trademarks owned by Polo and registered with the United States Patent and Trademark Office. Nor do the parties dispute that in early 1982 Gordon shipped roughly 600 dozen shirts so embroidered to the Ackerman Defendants, or that approximately six weeks later most if not all[4] of those shirts were shipped back to Gordon by Ackerman. Finally, there is no dispute that Gordon sold hundreds of the shirts returned to him by Ackerman to various purchasers; including 200 dozen to Defendant V.C. Matthews Associates, Inc., in Burlington, who in turn resold the shirts to Jamie Beene of Dallas, Texas, making $1,000.00 on the sale. Beyond this area of agreement, however, the facts and the conclusions to be drawn therefrom remain very much in dispute.

Gordon first had garments embroidered with a copy of Polo's polo player symbol in October of 1981. He purchased a number of sweaters from Pine State Knitting Mills in Mt. Airy, North Carolina, for about $12.00 each, and took them to Zodiac International Design, Inc., and Zodiac Originals, Inc., (collectively "Zodiac")[5] to have them embroidered with different symbols. While Gordon was at Zodiac, he noticed that Zodiac was embroidering various goods with a polo player symbol. Gordon was aware that Zodiac embroidered the polo player symbol on merchandise for the Plaintiff, and he requested Zodiac officials to embroider his sweaters with the same symbol. Zodiac agreed and Gordon paid them between 30 and 50 cents to embroider each sweater (Gordon Dep., pp. 13–19, 21). Based on Gordon's deposition testimony and some additional calculations and assumptions of its own, Plaintiff contends that Gordon sold Ackerman approximately 400 sweaters and 12 dozen ties, all of which were embroidered with a copy of Polo's polo player symbol. Plaintiff alleges that Gordon received $15.00 each for the sweaters and $7.00 each for the ties. Despite admissions seemingly to the contrary,[6] the Ackerman Defendants emphatically deny any purchase of ties or any other merchandise other than the 600 dozen knit shirts Gordon shipped to Ackerman.

---

**4.** Plaintiff contends that all but 100 dozen of the shirts were returned by Ackerman to Gordon—the remaining 100 dozen shirts having been sold by Ackerman for profit. Ackerman contends that all of the shirts which Gordon sent him were thereafter returned by him to Gordon once he (Ackerman) learned that the shirts were not authentic Polo shirts.

**5.** Polo has settled its claims against Defendants Zodiac Design International, Inc., and Zodiac Originals, Inc.

**6.** The Ackerman Defendants have admitted selling one men's sleeveless sweater, one ladies' sweater, and one men's tie, all of which bore Polo's polo player symbol but none of which bore the Polo label. *See* Ackerman Defendants' Response to Plaintiff's Request for Admissions Nos. 101–107 (hereinafter Ackerman Admissions, Gordon Admissions, etc.).

According to Plaintiff, the Ackerman Defendants' transaction with Gordon involving the approximately 600 dozen embroidered shirts began early in 1982. At that time, Jasper Mills, a knitting mill, offered Gordon a large quantity of striped knit shirts that were left over from a sale to one of their customers. Gordon bought samples of these striped knit shirts, had them embroidered by Zodiac with a copy of Polo's polo player symbol and sent them to Ackerman as samples. Ackerman allegedly told Gordon that he would purchase all the shirts (embroidered with a copy of Polo's polo player symbol) Gordon could get his hands on. (Gordon Dep., pp. 32–33).

Plaintiff further contends that Gordon purchased well over 600 dozen of such striped knit shirts from Jasper Mills for $2.50 per shirt, had 635 dozen of them embroidered by Zodiac with a copy of Polo's polo player symbol at a cost of 30 cents per shirt, and shipped the shirts to Ackerman (*Id.*, pp. 37–42; Exhibits 4, 9). According to Gordon, Ackerman assured him that they could not get in trouble for selling shirts embroidered with a copy of Polo's polo player symbol since the shirts did not have any polo labels on them, *e.g.*, POLO BY RALPH LAUREN. (*Id.*, pp. 33–34, 44–45).

Plaintiff contends that Ackerman then contracted with Gordon to pay $6.00 per shirt. Two weeks after Ackerman received all of the shirts, Gordon had not received any payment for them and he drove to Columbia, South Carolina, to talk to Ackerman. According to Gordon, Ackerman explained that due to the extremely cold weather he had not been able to sell as many of the shirts as he had anticipated and thus could not immediately pay Gordon. Gordon states that Ackerman indicated that he had sold about 100 dozen of the shirts and Plaintiff contends that Ackerman gave Gordon a check for $7,000.00 in payment for them. (*Id.*, pp. 42–44, 47). Thereafter, Gordon claims that Ackerman called him and told him that he (Ackerman) could not sell the shirts and was going to ship them back. (*Id.*, pp. 45–46). Gordon never counted the number of shirts Acker-

man returned to him. Gordon's only estimate of the number of shirts returned to him is based on what he claims is Ackerman's assertion of the sale and payment for 100 dozen of the shirts embroidered with a copy of Polo's polo player symbol. (*Id.*, pp. 46–48).

Ackerman's recollection of this transaction was quite different. The Ackerman Defendants concede that they did receive allegedly counterfeit Polo merchandise from Gordon in 1982. According to Ackerman, this single business transaction consisted of the shipments of several hundred dozen knit shirts, which he believed to be genuine Polo goods. (Ackerman Dep., p. 19).

Further, the Ackerman Defendants contend that this was their only dealing with Gordon and emphatically deny any purchase of ties, sweaters, or any other merchandise other than the knit shirts. (*See* Ackerman Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on the Issue of Liability, p. 2. *But see* footnote 6, supra). Ackerman contends that after receiving this merchandise from Gordon he held on to the shirts for a period of approximately forty-five days, during which time the merchandise was exhibited to potential buyers. (Ackerman Dep., p. 20). Upon learning that the merchandise received from Gordon was of questionable quality and not authentic Polo merchandise, Ackerman immediately shipped the entire order that he had received back to Gordon. (*Id.*).

All parties acknowledge that Gordon never counted the shirts that he received back from Ackerman. Plaintiff contends that Ackerman sold 100 dozen of these shirts, based upon a payment Gordon said Ackerman made to him in the amount of $7,000.00. The Ackerman Defendants contend, however, that the actual payment was Six Thousand Three Hundred Eighty-One and 25/100's Dollars ($6,381.25), and that said amount was not paid for shirts that Ackerman had sold from the Gordon order, but rather represented an initial pay-

ment to Gordon for these shirts during the period of time that he was attempting to determine their authenticity. (*Id.*, pp. 21–22).

After determining that the shirts were not authentic Polo goods, the Ackerman Defendants maintain that the entire shipment of knit shirts was immediately returned to Gordon. (*Id.*, p. 23). These shirts were shipped to Ackerman by Gordon on three separate occasions, and the aggregate weight of these shipments was approximately 2,900 pounds. (*Id.*, p. 24). On March 30, 1982, Ms. Madame McGriffin, Inc., shipped the entire order of shirts back to Gordon, the shipment weighing some 3,700 pounds. (*Id.*, p. 25). Since there was never an accounting done of this returned merchandise by Gordon, Ackerman contends that it is mere speculation by the Plaintiff that he (Ackerman) sold 100 dozen of these shirts. Ackerman maintains that all of the shirts were returned to Gordon and that the bills of lading from Standard Trucking Company (Plaintiff's Exhibit [3] in the Ackerman Deposition) is evidence that the shipment Ackerman returned to Gordon was of weight in excess of the shipment that he had received, thereby substantiating his assertion that the total shipment of shirts received from Gordon was returned.

Further, the parties do not dispute that, after the shirts were returned from Ackerman to Gordon, Gordon sold them to various individuals and entities in 1982, including 28 dozen to Hallelujah Wholesale in High Point for $6.00 each, 18 dozen to Lo-Price in Greensboro for $6.00 each, 12 dozen to Lebo's in Charlotte for $6.00 each, 50 dozen to Otto Drug Company in Louisville, Kentucky, for $5.00 each, 40 dozen to a Florida flea market vendor for $3.00 each, and 10 dozen to Contract Apparel Network in Atlanta, Georgia, for $6.00 each. (Gordon Dep., pp. 49–52, 56–61, 68–70).

In 1983, Gordon sold 200 of the embroidered striped shirts to Defendant Matthews Associates in Burlington for $4.00 each (Gordon Dep., pp. 81–83, Exhibit [5]; Matthew's Dep., pp. 9–21), 10 dozen to Will Mann in Roxboro for $5.00 each (Gordon Dep., pp. 85–87; Exhibit [5]), and 12 dozen to Myrtle Beach Sales for $6.00 each. (*Id.*).

Matthews Associates in turn sold the embroidered striped knit shirts purchased from Gordon to an individual in Dallas, Texas, named Jamie Beene ("Beene"),[7] making $1,000.00 on what was in effect a brokered sale. (Matthews Dep., pp. 12–23).

In addition to selling Matthews Associates 200 dozen striped shirts embroidered with a copy of Polo's polo player symbol, Gordon purchased over 1,400 solid-color knit shirts from Matthews (*Id.*, pp. 23–28), and had 25 dozen of these solid-color knit shirts embroidered with a copy of Polo's polo player symbol (Gordon Dep., pp. 79–80). Gordon paid $5.00 for each of the solid-color shirts obtained from Matthews and sold them for $6.00 to $9.00 each to various students for resale. (*Id.*, pp. 80, 83–85).

In 1983, Gordon also purchased about 73 dozen ladies' shirts from Jasper Mills, paying $4.40 per shirt, and had about 20 dozen of them embroidered with a copy of Polo's polo player symbol. (*Id.*, pp. 75–77). The 20 dozen embroidered shirts were then sold to various students at the University of North Carolina and Duke University for resale. (*Id.*, pp. 78–79).

## III. DISCUSSION

### A. *The Legal Standards for the Grant of Summary Judgment.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any

---

**7.** Polo presently has an action pending against Jamie Beene for trademark infringement and unfair competition entitled "*Polo Fashions, Inc.*

*v. Goldstein, Inc., et al.,* Civil Action No. CA3–83–2214–H (N.D.Tex., Dallas Division)."

party is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Magill v. Gulf & Western Industries, Inc.*, 736 F.2d 976, 979 (4th Cir.1984). All favorable inferences which may be drawn from the evidentiary facts must be accorded to the opponent of the motion. *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.*, 381 F.2d 245, 249 (4th Cir.1967). *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Magill*, 736 F.2d at 979.

Summary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles. *WSM, Inc. v. Tennessee Sales Company*, 709 F.2d 1084 (6th Cir.1983). In addition, in appropriate circumstances, it is proper for a court to grant summary judgment on the issue of liability alone and to leave the determination of damages for later proceedings. *See id.; Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947 (S.D.N.Y.1980).

B. *Plaintiff's Claim for Relief under 15 U.S.C. § 1114.*

As previously discussed, *supra* Section I, Polo is the owner of several U.S. trademark registrations covering the Polo trademarks. Under the law (15 U.S.C. § 1051 *et seq.*), federal registration of its trademarks gives Polo powerful statutory rights. Section 1114(1) provides in pertinent part, as follows:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services

on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...

. . . .

shall be liable in a civil action by the registrant for [infringement]. . . .

The statute further provides for injunctive relief and damages against infringers, but precludes an award of damages against innocent infringers under certain limited circumstances. 15 U.S.C. § 1114(2).

As the foregoing statutory language indicates, infringement is based on the existence of similarity such as would likely cause confusion of any appreciable number of ordinary prudent purchasers as to the source or origin of the goods. *Durox Company v. Duron Paint Manufacturing Company*, 320 F.2d 882 (4th Cir.1963). *See also Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (1984); *Marcon, Ltd. v. Helena Rubenstein, Inc.*, 694 F.2d 953, 955 (4th Cir.1982); *AMP, Inc. v. Foy*, 540 F.2d 1181, 1183 (4th Cir.1976).

Because trademark infringers rarely make absolutely identical copies, side-by-side comparison is normally inadequate to determine infringement. *See WSM*, 709 F.2d at 1087; *Holiday Inns, Inc. v. Holiday Inn*, 364 F.Supp. 775 (D.S.C. 1973). For this reason, courts have listed a number of factors to be considered in determining whether the accused copy bears a confusing similarity to plaintiff's registered trademark, including the strength of plaintiff's marks, the degree of similarity between the marks and between the products sold, the identity of the retail outlets and purchasers, the similarity of the advertising used by the parties, defendant's intent[8] and actual confusion caused by defendant's allegedly infringing marks. *Pizzeria Uno*, 747 F.2d at 1527; *Rubenstein*, 694 F.2d at 955; *AMP*, 540 F.2d at 1185–87.

An analysis of these factors leads the court to conclude that the polo player sym-

---

**8.** It is clear that Plaintiff need not prove intent to infringe on the part of Defendant to establish that an infringement has occurred. *Allen v. Standard Crankshaft and Hydraulic Co.*, 323

F.2d 29, 36 (4th Cir.1963). However, intent to exploit the goodwill created by an already registered trademark creates a presumption of likelihood of confusion. *AMP*, 540 F.2d at 1186.

bol which Gordon had embroidered on the various items of apparel involved in this case, including the over 600 dozen shirts which were shipped to the Ackerman Defendants and the 200 dozen shirts which were sold by Matthews Associates, is so similar to Plaintiff's protected mark that there is a "likelihood of danger that such use [by Defendants of the polo player symbol] will confuse the public in general, including plaintiff's customers, defendant's customers, and other members of the public." *AMP*, 540 F.2d at 1183. Indeed, it is difficult to see how the conclusion could be otherwise—Gordon, knowing Zodiac to be an embroiderer for Plaintiff, requested Zodiac officials to embroider the apparel involved herein *with the very same symbol* of the polo player which Zodiac was placing on apparel for Plaintiff. (Gordon Dep., pp. 13–19, 21). The marks at issue here are not just similar—they are *identical*. (*See* Plaintiff's Request for Admissions to Defendants Gordon, Ackerman, and Matthews —Exhibits).

▮▮▮ The most significant factor as far as this case is concerned, then, is the similarity between the marks, which has just been addressed. However, each of the other factors which the courts have listed as relevant in determining the likelihood of confusion also support this court's conclusion.

The strength of the trademark allegedly infringed is also a crucial factor in determining whether a likelihood of confusion exists so as to give rise to a finding of infringement. The fact that the Polo trademarks are the subject of U.S. trademark registrations, in addition to creating a strong presumption of validity, stands as proof of the strength of the marks. *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103 (2nd Cir.1978); *Communications Satellite Corp. v. Comcet*, 429 F.2d 1245 (4th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970). Nonetheless, it should be noted that registration is *not* a prerequisite to establishing trademark rights. In fact, one must use the trademark to create such

rights even before registration can be obtained. 1 McCarthy, *Trademarks and Unfair Competition* § 16:1, 16:5 (1973 and Cum.Supp.1982). *See Hanover Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) (trademark rights grow out of use); *Louis Ender, Inc. v. General Foods Corp.*, 169 U.S.P.Q. 92 (S.D.N.Y. 1972) (trademark ownership is acquired by use and not by federal or state registration).

It is true that Polo's polo player symbol, standing alone, was not independently registered as a trademark at the time the alleged infringements occurred, as Gordon alleges. It does not follow, however, that for this reason the polo player symbol is not entitled to protection. Indeed, quite the opposite is the case. Polo's polo player symbol is clearly a source identifier and a strong and protectable trademark. Indeed, as stated by Peter Strom, president of Polo, in his declaration in support of Polo's motion for summary judgment, Polo has sold more than 45 million items bearing Polo's polo player symbol, such that Polo's polo player symbol, regardless of any other of the Polo trademarks used in conjunction with the polo player symbol, has become immediately recognizable to the trade and public as indicating products emanating from Polo.

This fact has specifically been recognized by the district courts. For instance, in *Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F.Supp. 648, 651 (D.Mass.1984), the court held: "A strong mark is 'one which is used only in a fictitious or fanciful manner.'... The embroidered Polo logo is clearly a fanciful ... mark." *See also Pizzeria Uno Corp. v. Temple*, 566 F.Supp. 385, 396 (D.S.C.1983), *aff'd*, 747 F.2d 1522 (4th Cir.1984) (discusses why "fanciful" marks are given strong protection by the law while "descriptive" marks are afforded relatively weak protection).

Further, the United States District Court for the Southern District of New York in *United States Polo Association, Inc. v. Polo Fashions, Inc.*, Civil Action No. 84

CIV 1142 (LBS) (S.D.N.Y. December 6, 1984), held at page 1465 that:

> The court finds that the Polo player logo as used by PFI [Polo], alone ... is entitled to trademark status and that the use by USPA's [United States Polo Association] licensees of a similar figure in the context and manner in which it has been used does infringe on PFI's trademark rights [Plaintiff United States Polo Association's licensees were selling knit shirts embroided with a polo player symbol which the court found was similar to Polo's, although the shirt bore a neck label that identified the shirts as emanating from the United States Polo Association].[9]

This court's view is reinforced by the findings of the two courts mentioned above with respect to the strength of Polo's polo player symbol as a trademark, and Defendant Gordon's contention that the polo player symbol standing alone is not a protectable trademark, because it was not registered at the time of the alleged infringement, is unpersuasive.

Other factors mentioned by the courts as bearing on "likelihood of confusion" include the degree of similarity between the products sold, the identity of the retail outlets and purchasers, defendant's intent and the actual confusion caused by the allegedly infringing marks. These factors are much less significant in this case than those discussed above, but even so the use of a duplicate mark on the same type of product sold by Plaintiff (wearing apparel) and the subsequent sale of clothing so em-

broidered to people in the clothing business and ultimately to consumers further supports a finding of confusing similarity. Defendants contend that a material issue of fact precluding summary judgment exists as to whether Defendants acted intentionally in carrying out the allegedly infringing activities. To the extent that Defendants make such a contention, they are wrong. As is discussed above, *supra* n. 8, a plaintiff need not establish intent to infringe in order to prove that an infringement has occurred. *Allen v. Standard Crankshaft and Hydraulic Co.,* 323 F.2d 29, 36 (4th Cir.1963). *See also Colby College v. Colby College-New Hampshire,* 508 F.2d 804 (1st Cir.1975); *Estee Lauder, Inc. v. Watsky,* 323 F.Supp. 1064, 1067 (S.D.N.Y.1970); and McCarthy, *Trademarks and Unfair Competition* § 23:30. Nevertheless, intent is a factor which the court may consider. *AMP,* 540 F.2d at 1186. Based on their admissions and depositions, it is clear that Defendants Gordon, Matthews, and Matthews Associates [10] knew of Polo and Polo's polo player symbol and had discussions centering on whether they could get in trouble by using Polo's polo player symbol. (*See* Matthews Admissions 1, 80, 81, 82; Gordon Admissions 1, 81; Gordon Dep., pp. 33–34, 44–45).[11]

Accordingly, this court finds as a matter of law that the embroidered polo player symbols which Gordon admittedly had embroidered onto shirts not manufactured by Plaintiff created a substantial likelihood of confusion as to the origin of the product in the minds of potential consumers. To the

9. It is worthy of note that the United States Polo Association's licensees were using a polo player symbol that was noticeably different from Polo's polo player symbol, in contrast to Gordon's use of a symbol virtually identical to Polo's.

10. The court cannot conclude at the summary judgment stage anything regarding the intent of the Ackerman Defendants, given the conflicting versions of the facts put forth by Plaintiff (based on Gordon's deposition testimony) and the Ackerman Defendants.

11. There is very little evidence in this case to suggest what amount of actual confusion has

been experienced by consumers or potential purchasers of Plaintiff's shirts as a result of Defendants' infringing activities. Nonetheless this court is convinced that the other factors discussed above conclusively demonstrate that there is a substantial likelihood of confusion so as to support a finding of infringement, at least to the extent that such infringing marks were embroidered onto shirts not manufactured by Plaintiff and were introduced into commerce.

Likewise, the last factor mentioned by the courts as bearing on the issue of likelihood of confusion, *i.e.,* the similarity of advertising used by the parties, is of little or no consequence here since there is no evidence that any of the Defendants did any advertising.

extent that any of the Defendants involved in this case introduced apparel not manufactured by Polo but bearing the polo player symbol into commerce, they are liable for infringement. The question which remains to be answered is to what extent did Defendants place the shirts or other wearing apparel so embroidered into the stream of commerce.

### C. *Liability of Defendants under 15 U.S.C. § 1114.*

#### 1. Defendant Gordon.

■ There can be no question as to Gordon's liability for infringement in this case. He has admitted to having 400 sweaters, 12 dozen ties, and over 600 dozen shirts which had not been manufactured by Plaintiff embroidered with the polo player symbol. In addition, he has admitted to selling the 400 sweaters and 1 dozen ties to Ackerman (admissions which Ackerman denies), and to having sold hundreds of dozens of the infringing shirts to various companies and individuals during 1982 and 1983.

Gordon contends that summary judgment is inappropriate here because a material issue of fact exists as to whether his infringing actions were intentional. As is discussed above, a finding of intent is not a prerequisite to a finding of liability for infringement, *Standard Crankshaft*, 323 F.2d at 36, although to the extent that intent is a factor, it is not one which is in Gordon's favor. (*See Gordon Admissions 1, 81; Gordon Dep., pp. 33–34, 44–45*).

Gordon's actions as established by his own admissions clearly infringed Plaintiff's registered trademarks. Accordingly, the court will enter an order granting Plaintiff's motion for summary judgment as to its first claim for relief against Defendant Gordon on the issue of liability. Nonetheless, the burden remains upon Plaintiff to prove that it was damaged as a result of Gordon's infringing activities at trial.

#### 2. Defendants Matthews and Matthews Associates.

Defendants Matthews and Matthews Associates do not dispute the essential issue of Plaintiff's motion for summary judgment, that they acted as brokers for 200 dozen knit shirts not manufactured by Plaintiff but which bear copies of Polo's polo player symbol trademark. The affidavit in support of the Matthews Defendants' memorandum in opposition to Plaintiff's motion for summary judgment, however, asserts that summary judgment cannot be granted since there are genuine issues of material fact which need to be tried by the court. These material facts are alleged to be: (1) the Matthews Defendants did not infringe Polo's trademarks; (2) no reasonable person would be misled by the Matthews Defendants' use of Polo's polo player symbol; (3) Polo does not have any protectable rights in and to its polo player symbol trademark; and (4) the Matthews Defendants did not intend to infringe any of Polo's trademarks.

■ Each of these contentions is discussed above and the court sees no reason to reiterate its conclusions here. The Matthews Defendants have admitted brokering a sale of 200 dozen shirts which this court has found as a matter of law to bear an infringing polo player symbol. (*See* Matthews Deposition at 12–23).[12] Such a determination lies within the exclusive jurisdiction of this court. *WSM*, 709 F.2d at 1086. *See also Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443–44 (9th Cir.1980).

■ Clearly, the liability of Matthews Associates is established with respect to Plaintiff's first claim for relief, since it was actually Matthews Associates which brokered the sale of 200 dozen shirts from Gordon to Beene. However, Polo contends that Matthews should be held personally

---

**12.** The Matthews Defendants did not respond to Polo's request for admissions, and thus they are deemed admitted. Rule 36(a), Fed.R.Civ.P. By failing to respond to Polo's request for admis-

sions, Matthews Defendants essentially admitted each and every allegation made against them by Polo.

liable together with Matthews Associates for the sale. The court agrees. An individual defendant who participates in wrongful acts cannot shield himself behind a corporation, and he is personally liable for all of the damages suffered by plaintiff in cases of trademark infringement and unfair competition. *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 208 U.S.P.Q. 421 (S.D.N.Y.1980). *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978); *Polo Fashions, Inc. v. BDB, Inc.*, 223 U.S. P.Q. 43 (D.S.C.1983). Matthews has admitted being the president and treasurer of Matthews Associates. Matthews, on behalf of his company, bought shirts from Gordon bearing copies of Polo's polo player symbol. Matthews negotiated the sale of these shirts to Jamie Beene. Therefore, Polo is entitled to judgment against Matthews personally.

This court will enter an order granting Plaintiff's motion for summary judgment on the issue of liability as to Plaintiff's first claim for relief against Defendants Matthews and Matthews Associates.

3. Ackerman Defendants.

Unlike the situation presented by Defendants Gordon, Matthews, and Matthews Associates, who essentially admitted the gravamen of Plaintiff's complaint, Plaintiff's case against the Ackerman Defendants, in its motion for summary judgment, rests almost entirely on a deposition of co-defendant Lionel Gordon. The recollection of events given by Gordon contrast drastically with the testimony of Allan Ackerman, given in his deposition. If one were to accept the version stated in Gordon's deposition as valid and accurate, then summary judgment against the Ackerman Defendants would be appropriate. However, where there is contradictory testimony as to a material fact, as is the case here with respect to the Ackerman Defend-

ants, the case may not be disposed of by summary judgment, but can only be resolved by a trial on the merits. *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Cole v. Cole*, 633 F.2d 1083 (4th Cir.1980); *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

The court cannot grant summary judgment against any of the Ackerman Defendants based on the facts before it at this time. Plaintiff contends, based on Gordon's deposition testimony, that the Ackerman Defendants purchased 400 sweaters and 7 dozen ties not manufactured by Polo but bearing Polo's polo player symbol. While admitting that they sold one men's sleeveless sweater, one ladies' sweater, and one men's tie, all of which bore Polo's polo player symbol but none of which bore the Polo label (*see* Ackerman Admissions, 101–107), the Ackerman Defendants vigorously deny having any transactions with Gordon other than that involving the 600 dozen plus knit shirts. With respect to those knit shirts, the Ackerman Defendants contend that they were all sent back to Gordon when Ackerman learned that they were not authentic Polo apparel. Plaintiff, of course, contends that Ackerman sold 100 dozen of these shirts and was a knowing accomplice in the sale of counterfeit Polo goods. However, since Gordon made no accounting of the shirts returned to him by Ackerman, this matter is not susceptible to resolution on summary judgment.

Accordingly, this court will enter an order denying Plaintiff's motion for summary judgment with respect to Plaintiff's first claim for relief against the Ackerman Defendants, it having been determined by the court that there is a material issue of fact as to whether the Ackerman Defendants introduced into commerce apparel not manufactured by Polo but bearing the polo player symbol.[13]

13. The court recognizes that Defendants have admitted placing at least one men's sleeveless sweater, one ladies' sweater, and one men's tie, all of which bore Polo's polo player symbol but none of which bore the Polo label, into commerce. *See* Ackerman Defendants Admissions Nos. 101–107. However, the facts surrounding that transaction are insufficiently clear to the court for it to grant summary judgment in favor of Plaintiff against the Ackerman Defendants on that basis at this time.

D. *Plaintiff's Claim for Relief under 15 U.S.C. § 1125(a).*

■ Section 43(a) of the Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a), provides, in pertinent part, that:

Any person who shall affix, apply, or annex, or use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The use by Defendants of the Polo trademarks is a false description or representation of the source of origin of goods in violation of this statute. The test for liability under 15 U.S.C. § 1125(a) is one of "confusing similarity"—virtually the same test as that for trademark infringement—and constitutes a separate basis for relief and for Plaintiff to prevail on the issue of liability against Defendants Gordon, Matthews, and Matthews Associates. *See Apollo Distributing Company v. Apollo Imports, Inc.,* 341 F.Supp. 455 (S.D.N.Y. 1972); *Mortellito v. Nina of California, Inc.,* 335 F.Supp. 1288, 1294 (S.D.N.Y. 1972).

For the reasons discussed above, *supra* section III(B) and (C), the court will grant summary judgment on the issue of liability under 15 U.S.C. § 1125(a) for Plaintiff against Defendants Gordon, Matthews, and Matthews Associates. For the reasons also outlined above, the court will deny Plaintiff's motion for summary judgment against the Ackerman Defendants.

E. *Plaintiff's Claim for Relief for Common Law Unfair Competition.*

■ Polo should also prevail against Defendants Gordon, Matthews, and Matthews Associates on the issue of liability under the common law of unfair competition. *Polo Fashions, Inc. v. Extra Special Products, Inc.,* 451 F.Supp. 555, 563 (S.D. N.Y.1978); *Mortellito,* 335 F.Supp. at 1294.

Gordon, Matthews, and Matthews Associates have infringed the Polo trademarks in a manner likely to establish an association or connection between the goods which they sold and the goods sold by Polo. Such acts are likely to deceive purchasers and constitute misappropriation of the property rights of Polo. The North Carolina law of unfair competition affords protection against the tortious appropriation of trade names and trademarks alike. *Charcoal Steak House, Inc. v. Staley,* 263 N.C. 199, 202, 139 S.E.2d 185, 187 (1964). Like the law of trademark infringement discussed above, North Carolina's law of unfair competition is " 'the child of confusion.' " (citation omitted). *Id.,* 263 N.C. at 203, 139 S.E.2d at 188. The activities of Defendants Gordon, Matthews, and Matthews Associates clearly are likely to confuse consumers about the origins of the goods and hence constitute unfair competition.

" 'The test (of unlawful competition) is simple and lies in the answer to the question: Has plaintiff's legitimate business been damaged through acts of the defendants which a court of equity would consider unfair?' " *Carolina Aniline & Extract Co. v. Ray,* 221 N.C. 269, 273, 20 S.E.2d 59, 61 (1942), *quoted in Charcoal Steak House,* 263 N.C. at 203–04, 139 S.E.2d at 189. The court believes that it must answer that question in the affirmative.

As Judge Learned Hand said in *Yale Electric v. Robertson,* 26 F.2d 972, 974 (2d Cir.1928):

If another uses [one's trademark], he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use.... And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful.

The above reported summary of the law by Judge Hand has survived the test of time and is directly applicable to the present

facts. This court will not permit Defendants to trade upon Polo's reputation, which is symbolized by the Polo trademarks, and to tarnish Plaintiff's reputation by the substitution of other goods which they seek to sell with the help of the Polo insignia.

Accordingly, the court will grant summary judgment as to Plaintiff's third claim for relief against Defendants Gordon, Matthews, and Matthews Associates. For the reasons discussed in detail above, the court will not grant summary judgment at this time against any of the Ackerman Defendants due to the conflicting versions of the facts presented by the parties.

## IV. CONCLUSION

The test for each of Plaintiff's three claims for relief against the Defendants is essentially the same: to wit, whether Defendants have introduced into commerce merchandise bearing a mark which is "confusingly similar" to Plaintiff's polo player symbol so as to confuse the public as to the actual origin thereof. Defendants Gordon, Matthews, and Matthews Associates have admitted placing into commerce goods bearing a mark which is not just confusingly similar, but identical to the polo player symbol which forms the dominant aspect of several of Plaintiff's registered trademarks and which, standing alone, has come to be identified in the public mind with Polo. Thus, the reasons discussed here and with more particularity *supra*, the court will grant Polo's motion for summary judgment on the issue of liability with respect to each claim for relief against Defendants Lionel Gordon, V.C. Matthews, and V.C. Matthews Associates, Inc.

Due to the disputed facts summarized *supra*, regarding the potential liability of the Ackerman Defendants, the court will not enter judgment for Plaintiff at this time and Plaintiff's motion for summary judgment against the Ackerman Defendants will be denied.

Judgment and an order will be entered in accordance with this memorandum opinion.